Martha R. SCHINE, Donald G. Schine and Dorene S. Higier in their individual capacities and as Executors and Trustees under the Will of Louis W. Schine, Deceased, Plaintiffs,

v.

J. Myer SCHINE, G. David Schine and C. Richard Schine, Defendants.

No. 65 Civil 3256.

United States District Court
S. D. New York.

Feb. 7, 1966.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for plaintiffs;

Louis Nizer, Walter S. Beck, Neil A. Pollio, New York City, of counsel.

Amen, Weisman & Butler, New York City, for defendants J. Myer Schine and C. Richard Schine; Herman L. Weisman, Robert S. Persky, Herbert F. Roth, New York City, of counsel.

WEINFELD, District Judge.

This litigation centers about the sale by minority shareholders of their stock in a one hundred per cent family-owned corporation, Schine Enterprises, Inc. (Enterprises). The plaintiffs, Martha R. Schine, Donald G. Schine and Dorene S. Higier, are the widow and children of the late Louis W. Schine, brother of the defendant, J. Myer Schine. The other named defendants are his sons, G. David Schine and C. Richard Schine. The plaintiffs were the owners of 37.6% of the stock of Enterprises; the defendants owned the balance and were also controlling directors of the corporation and its subsidiaries. As is not unusual in a family feud, there are ugly charges and countercharges, and unfortunately the attorneys also engage in accusations and recriminations.

The thrust of the complaint is that the defendants, through conspiratorial conduct, various fraudulent devices and schemes and violation of their fiduciary duties as directors and majority stockholders, induced plaintiffs to sell them their 37.6% minority interest at far less than its true value. Four separate claims are set forth. The first and third, containing appropriate allegations as to the use of instrumentalities of interstate commerce, charge violations of section 10 (b) of the Securities Exchange Act of 1934[1] and Rule 10b–5[2] promulgated thereunder by the Securities and Exchange Commission. Jurisdiction is alleged under section 27 of the Act.[3] The second and fourth claims in essence charge that the defendants, as majority and controlling stockholders and directors, violated their state-created fiduciary duties to plaintiffs. Jurisdiction as to these claims, in the absence of diversity of citizenship, rests upon the doctrine of pendent jurisdiction.[4]

First, the defendants move to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12 (b) (1) of the Federal Rules of Civil Procedure. The defendants here advance a contention repeatedly urged upon the courts from the inception of the 1934 Act, to wit, that section 10(b) does not apply to transactions in the instance of closely held or family-owned corporations, but was intended by Congress to reach deceptive and manipulative practices only in instances of the purchase and sale of securities registered on a national exchange or publicly traded and distributed. This court recently rejected such a contention in analogous circumstances, holding that as long as the jurisdictional requirements as to the use of the mails and instrumentalities of commerce are satisfied, it matters not that the securities transaction was private.[5] Other courts which have considered the question[6] uniformly have ruled adversely to the defendants' contention.[7] The motion to dismiss for lack of

1. 15 U.S.C. § 78j(b).

2. 17 C.F.R. § 240.10b–5.

3. 15 U.S.C. § 78aa.

4. See generally, Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933).

5. Kane v. Central Am. Mining & Oil, Inc., 235 F.Supp. 559, 563–564 (S.D.N.Y. 1964).

6. See Matheson v. Armbrust, 284 F.2d 670, 674 (9th Cir. 1960), cert. denied, 365 U.S. 870, 81 S.Ct. 904, 5 L.Ed.2d 860 (1961); Fratt v. Robinson, 203 F.2d 627, 630–631, 37 A.L.R.2d 636 (9th Cir. 1953); Nemitz v. Cunny, 221 F.Supp. 571, 573–574 (N.D.Ill.1963); Northern Trust Co. v. Essaness Theatres Corp., 103 F.Supp. 954, 961 (N.D.Ill.1952); Robinson v. Difford, 92 F.Supp. 145, 147–148 (E.D.Pa.1950); Kardon v. National Gypsum Co., 69 F.Supp. 512 (E.D.Pa. 1946). See generally, 3 Loss, Securities Regulation 1466–67 (2d ed. 1961).

7. See 3 Loss, Securities Regulation 1467 (2d ed. 1961), which states that this

federal subject matter jurisdiction is denied. Since the federal claims alleged in counts 1 and 3 survive the defendants' motion to dismiss, the plaintiffs' state-created or common law claims set forth in counts 2 and 4, relating to and based upon those same transactions are properly before the court.[8]

Next, the defendants move pursuant to Rule 12(b) (6) to dismiss the complaint for failure to state a claim upon which relief can be granted. Since affidavits have been submitted, the Rule 12 motion is treated as one under Rule 56 for summary judgment,[9] for which defendants also expressly move.

The plaintiffs charge that among the deceptive practices and means used by the defendants to coerce them to sell their stock at much below its true value was a simulated financial crisis in the affairs of Schine Enterprises, Inc., brought about by the defendants' willful failure and refusal to have Enterprises meet its debt service and current and maturing obligations, although able to do so, thereby causing the commencement of various creditors' suits and foreclosure proceedings against Enterprises' properties, all for the purpose of creating fear in the minds of the plaintiffs of imminent insolvency and bankruptcy proceedings; that in consequence the plaintiffs, to protect the interests of Enterprises, as well as their own, and to avoid insolvency proceedings, were forced to consider either one of two alternatives: a voluntary liquidation of Enterprises' properties, or a sale of their stock to the defendants.

The complaint further charges that although in June 1965 the defendants agreed to a voluntary liquidation plan, they refused to consummate it and instead offered to purchase plaintiffs' stock; that on July 6, 1965 the parties entered into an agreement whereby the plaintiffs agreed to sell their 37.6% minority interest to the defendants for a total of $5,332,000, of which $100,000 was paid upon the execution of the contract, the balance to be paid sixty days thereafter, or earlier, at the defendants' option; that the defendants in fact accelerated the final closing and paid the balance on September 1, 1965 at 3 p. m.

The plaintiffs further allege that having deliberately created the apparent critical condition in the affairs of Enterprises, which led them to sell their stock much below its true value, the defendants at the time of the contract closing had already agreed to sell all of Enterprises' underlying assets to a group referred to as Wien-Helmsley for $64,400,-000 and when, for a reason which does not appear, this deal fell through, the defendants thereafter negotiated and concluded an agreement for the sale of the properties to Realty Equities Corporation for $69,500,000. The Realty Equities purchase agreement was closed at 7 a. m. on September 1, eight hours before the plaintiffs delivered their stock to the defendants at the final closing at 3 p. m. of that day. The charge is that the defendants failed to disclose these material transactions in violation of section 10(b) of the Act and Rule 10b–5, and further, as fiduciaries, violated their common law duty by concealing such transactions, which plaintiffs say materially affected their judgment. Plaintiffs assert had they known thereof, they would not have sold or delivered the stock at the price they did. They add that the sale of all the properties at either price indicates that their shares were worth

---

"result has been reached, on one rationale or another, in all the * * * cases in which the question has been raised."

8. See Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 324–325, 59 S.Ct. 191, 83 L.Ed. 195 (1938); Hurn v. Oursler, 289 U.S. 238, 246, 53 S.Ct. 586 (1933); Hazel Bishop, Inc. v. Perfemme, Inc., 314 F.2d 399, 402–403 (2d Cir. 1963); Kane v. Central Am. Mining & Oil, Inc., 235 F.Supp. 559, 567–568 (S.D.N.Y.1964).

9. See Cook v. Hirschberg, 258 F.2d 56, 57–58 (2d Cir. 1958); Hirsch v. Archer-Daniels-Midland Co., 258 F.2d 44, 45–46 (2d Cir. 1958).

many millions more than the price at which they were sold to the defendants.

■ The complaint upon its face is sufficient to withstand the defendants' attack for failure to state a claim. However, the basis of the defendants' motion for summary judgment is the delivery of a release by plaintiffs at the final closing on September 1, 1965, as required by the July 6 contract. The release, in addition to the usual standard provisions, contains the following:

> " * * * including but not limited to any claims arising by reason of any willful misrepresentation of the values of properties (*or of any offers made for the purchase of the same*) owned by Schine Enterprises, Inc. * * * it being the intention that * * * the PURCHASERS * * * be discharged and released from each and every claim or cause of action, including but not limited to contract and tort, including fraud, liability." [Emphasis supplied.]

■ The defendants urge that as a matter of law the release is an absolute bar to the plaintiffs' claim. Their position must be upheld if the release is without obvious or latent ambiguities, since in that circumstance it may not be varied or contradicted by parol testimony.[10] The plaintiffs, however, challenge the defendants' construction as to the scope of the release. Thus the issue presented is whether upon its face the release clearly bars the claim now asserted.

The defendants contend that although the quoted provision specifically refers only to "willful misrepresentation of the values of properties (*or any offers made for the purchase of the same*),"[11] it is broad enough to cover claims for concealment of material matters which, as fiduciaries, they were under a duty to disclose to plaintiffs, and so embraced the Wien-Helmsley transaction which did not materialize, and the consummated Realty Equities sale, even though those transactions came into being at the time of or subsequent to the stock sale agreement. The defendants say their interpretation is supported by the clause stating " * * * the intention [is] that * * * the PURCHASERS * * * be released from each and every claim or cause of action, including but not limited to contract and tort, including fraud, liability." In sum, the defendants argue that the release extends not only to claims in existence at the time of the agreement, but also to future claims, whether grounded upon affirmative misrepresentations or concealment of material matters.

Plaintiffs read the release otherwise. Their essential position is that by its very terms it is restricted to claims based upon the specific affirmative representations mentioned—(1) the value of the properties, and (2) offers for purchase —and limited to representations made prior to the time the stock purchase agreement was entered into. The plaintiffs further argue that the construction of the release urged by the defendants would result in a grant of general immunity to defendants for their fraudulent conduct, and so would be contrary to public policy [12] and violative of section 29(a) of the Securities Exchange Act,[13] which voids any stipulation or provision waiving the protection afforded under the Act or any rule or regulation thereunder.[14]

---

10. See Gerhart v. Henry Disston & Sons, 290 F.2d 778, 784 (3d Cir. 1961); Oxford Commercial Corp. v. Landau, 12 N.Y.2d 362, 365, 239 N.Y.S.2d 865, 190 N.E.2d 230 (1963); M. O'Neil Supply Co. v. Petroleum Heat & Power Co., 280 N.Y. 50, 55–56, 19 N.E.2d 676 (1939); Petrie v. Trustees of Hamilton College, 158 N.Y. 458, 53 N.E. 216 (1899).

11. Emphasis supplied.

12. See Danann Realty Corp. v. Harris, 5 N.Y.2d 317, 323, 184 N.Y.S.2d 599, 157 N.E.2d 597 (1959) (dissenting opinion of Fuld, J.); Bridger v. Goldsmith, 143 N.Y. 424, 428, 38 N.E. 458 (1894).

13. 15 U.S.C. § 78cc(a).

14. Cf. Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953).

To bring the matter in focus, it is desirable to point out that under the agreement between the parties the plaintiffs retained legal title to the stock and all legal rights with respect thereto until the stock was fully paid for. The prime thrust of their charges is that the defendants failed to disclose material facts which, as controlling stockholders, they were under a duty to disclose, both under common law principles [15] and by virtue of statutory command.[16] The charges are not grounded upon any claim that plaintiffs entered into the agreement to sell their stock by reason of affirmative representations as to (1) the value of the properties or (2) offers received for them, the items specifically referred to in the release. This at once distinguishes Danann Realty Corp. v. Harris,[17] so heavily relied upon by defendants, where the allegations in the complaint of reliance upon representations collided head on with plaintiff's explicit disavowal in the agreement sued upon of such representations and reliance. The charge here is that the defendants concealed what they, as fiduciaries, were duty bound to disclose to their fellow stockholders— that they had deals for the sale of all the corporate assets. While the court, of course, does not on this motion pass upon the verity of the charges of fraudulent concealment as alleged in the complaint and elaborated upon in the affidavits, it cannot be said that the release is so clear and unequivocal that as a matter of law the defendants are exonerated from liability based upon such claims.

In the circumstances the scope of the release and the matters to which it was intended to apply may be established by parol evidence. The Parol Evidence Rule does not foreclose such testimony. A case in point is Rotberg v. Dodwell & Co.[18] The issue there was whether a general release applied to future claims as well as to those in existence at the time the release was given. Our Court of Appeals held that an affidavit of defendant's attorney, stating "that he explicitly told plaintiffs' attorney that he would require a general release so as to terminate all possible claims by plaintiffs in the future, as well as in the present," [19] was properly considered on the the question of the scope of the release. The court there said that the Parol Evidence Rule "does not exclude evidence to interpret, explain, or clarify (rather than contradict) the written document," and that "the evidence of the statements of defendant's attorney does not change or modify the release, but only defines the subject matter to which it was meant to apply." [20]

The court here simply holds that the complaint, with its charges of fraudulent conduct, is adequate as a pleading and that the affidavits with respect to the general release present issues of fact as to its scope which entitle the plaintiffs to their day in court. This disposition makes it unnecessary to consider plaintiffs' contention that the release, if construed as urged by the defendants, would offend public policy and would run afoul of section 29(a) of the Securities Exchange Act.

The defendants finally urge that when the plaintiffs delivered the release at the closing and received payment for their shares, they already had knowledge of the Wien-Helmsley and Realty Equities

15. See Lesnik v. Public Indus. Corp., 144 F.2d 968, 977 (2d Cir. 1944); Saville v. Sweet, 234 App.Div. 236, 254 N.Y.S. 768 (1st Dep't 1932), aff'd, 262 N.Y. 567, 188 N.E. 67 (1933); 3 Fletcher, Cyclopedia Corporations § 1171, at 865–68 (permanent ed. 1965).

16. See List v. Fashion Park, Inc., 340 F.2d 457, 461–462 (2d Cir. 1965); Kohler v. Kohler Co., 319 F.2d 634, 638 (7th Cir. 1963); Speed v. Transamerica Corp., 99 F.Supp. 808, 825–829 (D.Del.1951).

17. 5 N.Y.2d 317, 184 N.Y.S.2d 599, 157 N.E.2d 597 (1959).

18. 152 F.2d 100 (2d Cir. 1945). Accord, Cahill v. Regan, 5 N.Y.2d 292, 299–300, 184 N.Y.S.2d 348, 157 N.E.2d 505 (1959). See also the cases cited in note 10 supra.

19. 152 F.2d at 101.

20. Ibid.

transactions, and accordingly are estopped from asserting claims based thereon. The defendants attribute knowledge to the plaintiffs because of extensive publicity with respect to both transactions; and a defense attorney alleges that the day before the final closing one of plaintiffs' counsel acknowledged he knew of the Realty Equities transaction.

■ We pass for the moment the question of whether in this day of press releases, press agents and planted and slanted stories,[21] a newspaper version of a transaction is a substitute for a fiduciary's obligation to his beneficiaries of full and fair disclosure of material matter. In any event, the plaintiffs deny that, despite the publicity, they had any of the information about the transactions to which they were entitled, and plaintiffs' counsel denies the knowledge attributed to him by defense counsel. Moreover, on August 25, 1965 the defendants' attorney, in response to a specific inquiry, stated in writing that there was "no agreement for the sale of all, substantially all, or, indeed, any of the assets of Enterprises, or any subsidiary thereof, with any person, firm or corporation." It is now asserted that this statement was true since the "agreement for the sale of the assets of Enterprises came into being at 7 A.M. on September 1, 1965." The plaintiffs, however, contend that the response was misleading and lulled them into inaction in that it failed to reveal full information since the defendants themselves now acknowledge that commencing about August 20 they were in deep and continued negotiations which eventuated in the 7 a. m., September 1 agreement. The controversy as to whether or not in fact the

plaintiffs had the requisite knowledge essential to a defense of estoppel obviously must await trial determination.[22]

The motion for summary judgment is denied.

---

21. The defendant J. Myer Schine himself states that with respect to the Wien-Helmsley negotiations, although the proposed purchasers sought only an option to buy the properties, he authorized release of a story to the newspapers that Enterprises' properties were being acquired by them.

22. See Begnaud v. White, 170 F.2d 323, 326 (6th Cir. 1948); Delson v. Minogue, 190 F.Supp. 935, 938 (E.D.N.Y.1961). See generally, 6 Moore, Federal Practice ¶ 56.17[21], at 2210 (1953). Compare Boro Hall Corp. v. General Motors Corp., 164 F.2d 770, 772–773 (2d Cir. 1947).