**Martha R. SCHINE, Donald G. Schine and Dorene S. Higier in their individual capacities and as Executors and Trustees under the Will of Louis W. Schine, Deceased, Plaintiffs,**

**v.**

**J. Myer SCHINE, G. David Schine and C. Richard Schine, Defendants.**

**No. 65 Civ. 3526.**

United States District Court
S. D. New York.

June 16, 1966.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for plaintiffs, Louis Nizer, Walter S. Beck, Neil A. Pollio, New York City, of counsel.

Amon, Weisman & Butler, New York City, for defendants, Herbert L. Weisman, Robert S. Persky, Herbert F. Roth, New York City, of counsel.

## MEMORANDUM

FRANKEL, District Judge.

On February 7, 1966, Judge Weinfeld denied defendants' motions to dismiss and for summary judgment. Schine v. Schine, D.C., 250 F.Supp. 822. The basis for the summary judgment motion was the release delivered by plaintiffs at the closing of the sale to which the lawsuit relates. In a characteristically cogent opinion which makes a restatement of the pleaded facts superfluous here, Judge Weinfeld held that the parol evidence rule did not foreclose testimony to establish "the scope of the release and the matters to which it was intended to apply * *." Id. at 826.

A little more than a month later, on March 17, 1966, defendants J. Myer Schine and C. Richard Schine served an "Amended Answer and Counterclaim" in which the disputed release was moved to a new place on the stage. Like the original answer of these defendants, but with some elaboration, this one pleads the release as an affirmative defense. The innovation is that the amended answer also asserts the release as the basis for a counterclaim, the thesis of which is that defendants have been and are being injured by plaintiffs' "breach of the release and covenant not to sue * * *." On their counterclaim, these defendants pray for "[s]pecific performance of the release by way of preliminary and final injunction" and "damages, including punitive and exemplary damages for plaintiffs' wilful and malicious breach of their release and covenant not to sue, in such amounts as this Court may award."

Defendants' revised pleading formula has been thought by both sides to warrant a new round of motions on robust sets of papers. Having failed in the effort to make the release a ground for summary judgment, defendants now use it to move for an order (1) enjoining further prosecution of plaintiffs' claims until the counterclaim (based upon the release) is de-termined, (2) providing for a separate trial of the counterclaim, (3) staying all other pretrial procedures pending completion of such procedures on their affirmative defense and counterclaim, and (4) "preserving defendants' right to priority of deposition pending the final disposition of this motion * * *." * Plaintiffs have countered with a motion to strike the counterclaim. Neither motion, despite the bulk and learning of the papers, serves in the end to advance the litigation toward the goal of final resolution.

■ 1. Defendants' afterthought—that the release should be pleaded as a counterclaim as well as an affirmative defense—affords no basis either for the injunction or the separate trial they seek. Rule 8(c), Fed.R.Civ.P., reflecting familiar doctrine, contemplates that the claim of release will normally be pleaded and proved as an affirmative defense. This is clearly a case for following the pattern thus outlined.

■ Defendants' thesis is that their defense and counterclaim based upon the release can be excised and tried separately by focusing upon the circumstances immediately surrounding that document. The argument is not persuasive. The complaint, which was obviously not required to refer to the release, alleges a course of conspiracy and fraudulent concealment extending from before the agreement of July 6 through September 1, 1965, when the release was delivered pursuant to the agreement. In meeting the defense and counterclaim, plaintiffs are entitled to assert that the fraud they claim in the entire transaction fatally infects the portion, the release, on which defendants rely.

This may extend beyond the issue Judge Weinfeld noted as sufficient basis for denying summary judgment—namely, whether the release was *intended* to absolve defendants from liability for fraud. But there is no inconsistency. Judge Weinfeld expressly left open whether the

* The last aspect—"preserving defendants' right to priority"—appears at best to indicate an unfortunate oversight. On March 4, 1966, Judge Levet granted a motion of plaintiffs conferring such priority upon them.

release, if it purported to cover fraud, would be valid. 250 F.Supp. at 826. The point of present importance is that plaintiffs have a right to develop the facts bearing on this issue.

There is at least a substantial question whether the release, if it is construed as broadly as defendants contend it should be, is valid either under federal law (governing the first and third causes of action) or state law (governing the second and fourth). Section 29(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78cc(a), is a substantially identical counterpart of Section 14, Securities Act of 1933, 15 U.S.C. § 77n. See Colonial Realty Corporation v. Bache & Co., 358 F.2d 178, 183 n. 5 (2d Cir. 1966). The latter renders unenforceable not only waivers of claims based upon misrepresentations, but even agreements to arbitrate in lieu of pursuing the remedies Congress gave. And this is so despite the hospitable view Congress has expressed in the United States Arbitration Act, 9 U.S.C. § 1 et seq., toward arbitration. Wilko v. Swan, 346 U.S. 427, 434–435, 438, 74 S.Ct. 182, 98 L. Ed. 168 (1953). It would be at least highly anomalous against this background to hold under section 29(a) that a party, without knowing the facts, could effectively bar himself by a release from suing for fraud in the transaction of which the release was part. Cf. 3 Loss, Securities Regulation 1815–16 (2d ed. 1961).

Similarly, the authoritatively stated public policy of New York appears to denounce such a release as ineffectual. Bridger v. Goldsmith, 143 N.Y. 424, 38 N.E. 458 (1894); Pearce v. Knepper, Sup., 53 N.Y.S.2d 845, 846 (N.Y.Co.), aff'd, 269 App.Div. 829, 56 N.Y.S.2d 415 (1st Dep't 1945).

Like Judge Weinfeld, we refrain at this stage from ruling on the validity of the release. In the opposing, but still untried, factual contentions of the parties, there is room to theorize either way. What has been said is merely to indicate that there is need to explore the factual picture fully—including the circumstances leading to, as well as those immediately attending, the release—in order to resolve this question of validity.

The course of this exploration will inevitably cover many or most of the alleged facts on which plaintiffs ground their claims for relief. In the circumstances, there is no justification for defendants' effort to transform the defense of release into a separate claim for injunctive relief. Radio Corp. of America v. Raytheon Mfg. Co., 296 U.S. 459, 56 S.Ct. 297, 80 L.Ed. 327 (1935); Burke v. Burke, 212 N.Y. 303, 106 N.E. 62 (1914). Similar reasoning leads to rejection of the motion for a separate, advance trial of the defense and counterclaim. The issues, far from being clearly severable, are intertwined with those raised in the complaint. The claim of economy for the parties and the court is unimpressive. Defendants' proposal promises all the waste and disadvantage, with none of the benefits, of piecemeal litigation. See Grissom v. Union Pac. R. Co., 14 F.R.D. 263, 264–265 (D.Colo. 1953); 5 Moore, Federal Practice 1217 (2d ed. 1964); cf. Michael Rose Productions v. Loew's Incorporated, 19 F.R.D. 508, 509 (S.D.N.Y.1956), appeal dismissed, 246 F.2d 605 (2d Cir 1957).

2. Our views with respect to defendants' motion entail the conclusion that there is considerably more merit in plaintiffs' motion to strike the counterclaim. At least in its primary prayer for injunctive relief, the counterclaim appears to be unfounded as a matter of law. But defendants also include a prayer for damages. And they allege that plaintiffs' "breach of their release and covenant not to sue was wilful and malicious."

The odds seem heavy against the claim for damages. But it cannot be said with certainty that there is no state of actual facts that could entitle defendants to compensation for breach of a covenant not to sue. The scope of the release has already been held a matter for trial. It is conceivable that such an inquiry may produce a basis for finding a "contrac-

tual \* \* \* authorization" of damages for violation of the covenant. See Artvale Inc. v. Rugby Fabrics Corp., 232 F. Supp. 814, 826 (S.D.N.Y.1964). At least, the issue is not so clear as to justify its final resolution at this pleading stage.

Both motions are denied.

It is so ordered.