**In re FRIGITEMP CORP., Bankrupt.**

**Bankruptcy No. 78 B 468.**

United States Bankruptcy Court,
S.D. New York.

March 28, 1984.

Bernstein & Obstfeld, New York City, Berger & Montague, Philadelphia, Pa., special counsel to trustee.

Anderson, Russell, Kill & Olick, New York City, for Veliotis.

Spengler, Carlson, Gubar, Brodsky & Rosenthal, New York City, for James Gilliland.

Hollman & Byrne, New York City, for I.D.T. and George and Lenore Davis.

JOHN J. GALGAY, Bankruptcy Judge.

The trustee ("Trustee") in bankruptcy of Frigitemp Corp. ("Frigitemp") has applied for an order approving access to certain rule 205[1] examination transcripts and related exhibits. These transcripts were made at examinations taken pursuant to a January 23, 1980 order issued by Bankruptcy Judge Lewittes.

The Trustee's application specifically requests access to at least the transcripts of examinations taken of George Davis ("Davis"), Panagiotis Takis Veliotis ("Veliotis"), James H. Gilliland ("Gilliland") and certain named others.[2] The examinations took place during 1980, on specific dates set out in the Trustee's application. The Trustee also requests that this Court authorize the disclosure, under seal, of the contents of these transcripts to the Delaware district court and to those who are parties to an action which has been commenced in that district by the trustee and which is entitled *Lawson F. Bernstein, Trustee in Bankruptcy of Frigitemp Corp. v. I.D.T. Corporation et al.*, Civil No. 83–294 (D.Del.) ("District Court Action"). For the reasons set forth below, the Court grants the Trustee's request.

*Facts*

a. *Background and Parties*

Prior to its bankruptcy, Frigitemp was a publicly held corporation with its principal

1. Bankruptcy Rule 205 provides, in relevant part:

    (a) *Examination on Application.* Upon application of any party interest, the court may order the examination of any person. The application shall be in writing unless made during a hearing or examination or unless a local rule otherwise provides.

2. The remaining transcripts are of examinations taken of David T. Parsons, Joseph Lennox, Carter W. Eltzroth and Shanker Paul.

place of business located in New York City. Frigitemp was engaged in the business of subcontracting on marine construction of naval and merchant vessels, including the design and installation of interior fixtures and equipment, commonly known as "joiner work", as well as the design and installation of marine insulation materials.

On March 20, 1978, Frigitemp filed a voluntary petition for relief under Chapter XI of the Act. On May 29, 1979, Frigitemp was adjudicated a bankrupt and the Trustee was appointed.

General Dynamics Corp. ("General Dynamics"), with whom Frigitemp did substantial business, is a publicly held corporation with its principal place of business in St. Louis, Missouri. General Dynamics is engaged, *inter alia*, in the business of ship construction at its Quincy Shipbuilding Division, ("Quincy Division"), located in Quincy, Massachusetts. Veliotis and Gilliland were, respectively the President and Vice-President of the Quincy Division at all times relevant to this proceeding.

Davis is a former senior vice-president of Frigitemp who had been in charge of Frigitemp's subcontracting work with Quincy Division. In 1978, just prior to Frigitemp's bankruptcy, Davis formed Intersystems Design and Technology Corp., which later became I.D.T. Corp. ("IDT"). Since 1978, Davis has served as IDT's president and as a member of its board of directors.

b. *The Protective Order and Settlement Agreement*

On January 23, 1980, Judge Lewittes granted the Trustee's application to investigate Frigitemp's affairs including the existence of possible claims against various third parties. Pursuant to that order and subsequent others, the persons named above were examined by the Trustee under Bankruptcy Rule 205.

On June 12, 1983, Judge Lewittes issued a protective order (the "Protective Order") which covered all documents and information that were designated as confidential by IDT. This "confidential" material supposedly was produced during the course of the Trustee's 205 examination. The order also circumscribed who would be allowed access to the confidential documents and information and the circumstances under which access might be had. The order prohibited the Trustee from using information and documents designated as confidential for any purpose except in discharge of his statutory duties; duties which included any litigation by the Trustee against IDT. No limit was placed on IDT's use or disclosure to any party of the confidential information.

Following the 205 examinations, and the issuance of the Protective Order the Trustee entered into negotiations with counsel for IDT and Davis. The negotiations produced a settlement agreement ("Settlement Agreement") which was approved by Judge Lewittes on April 28, 1981. The agreement provided in part, that the Trustee would assign to IDT certain purchase orders, patents and claims which the Trustee might then have had against various entities which were collectively referred to as the "Assignment Group." The Settlement Agreement also provided for a release of claims, by Frigitemp, against certain entities collectively referred to as the "Releasees", a group which included Davis, IDT, General Dynamics and certain divisions, subsidiaries and employees of General Dynamics. Relevant to the instant dispute is paragraph 9(c) of the Settlement Agreement which provided, in part:

(c) To the extent permitted by law, deliver to IDT all transcripts, and all copies thereof, of any examination pursuant to Bankruptcy Rule 205 of any of the Releasees or members of the Assignment Group and all documents provided at, or in connection with, such examinations; *provided, however,* that (i) the original of each such transcript and document shall be maintained in the sealed repository of the Court (the "remaining original"); (ii) said remaining originals and the information contained herein shall be subject to the provisions of the Protective Order only to the extent that such materials are currently subject to the provisions of

such Order; (iii) the Trustee and his counsel shall, for use solely in the discharge of the Trustee's statutory duties, have access to said remaining originals within the Courthouse of the Bankruptcy Court and the right to make copies and extracts thereof, *provided, however,* that such copies and extracts shall be maintained under lock and seal in the offices of the Trustee's counsel; (iv) IDT shall have notice of, and an opportunity to resist, any application by any party to unseal all or a portion of any said remaining original . . .

The scope of the Settlement Agreement, as shown above, went beyond the terms of the Protective Order to include all 205 examination transcripts and documents regardless of whether they were designated as "confidential" by IDT. The Settlement Agreement did, however, expressly incorporate into its terms the provisions of the Protective Order. Like the Protective Order, the Settlement Agreement also provided the Trustee with access to sealed materials in the course of the Trustee's discharge of his statutory duties.

### c. *The District Court Action*

On May 19, 1983 the Trustee commenced the District Court Action against IDT, Davis, Veliotis, Gilliland, General Dynamics and others. In his complaint the Trustee alleged, *inter alia,* violations of the Racketeer Influenced and Corrupt Organizations, Act, 18 U.S.C. § 1961, *et seq.,* common law fraud, negligence and bankruptcy fraud. See 18 U.S.C. § 152. At the center of the Trustee's complaint was the allegation that the defendants named in the District Court Action fraudulently induced the Trustee to enter into the Settlement Agreement. The Trustee claims in that action that an illegal conspiracy to extort kickbacks and other illegal rebates from Frigitemp was entered into by Gerald Lee ("Lee"), the former chairman of Frigitemp, along with Davis, Veliotis and Gilliland. Two contracts entered into by Frigitemp with Quincy in or about 1973 and 1974 serve as the focus of the Trustee's complaint. Frigitemp entered into these contracts to perform marine joiner and insulation work for Quincy. The Trustee alleges that the contracts were first valued at roughly 28.5 million dollars, and then after the second contract was revised, they were valued at significantly more.

According to the Trustee, Lee, Davis, Veliotis and Gilliland agreed that in connection with the Quincy contracts, and upon Veliotis' and Gilliland's request, Davis and Lee would arrange for a transfer of Frigitemp funds, in an amount equal to at least 10% of the value of the contracts, to Veliotis and Gilliland. The transfer of funds was allegedly accomplished through the submission of false invoices to Frigitemp by a series of "dummy" corporations in which Davis had either direct or indirect interest or control. Funds from those corporations were supposedly then transferred into accounts controlled by Veliotis, Gilliland and others at the Union Bank of Switzerland, Lausanne, Switzerland. The Trustee's allegations were based on a review of the records of the Swiss accounts and of certain other records which had come into the Trustee's possession after the Settlement Agreement was approved by Judge Lewittes.

The Trustee now maintains in the District Court Action and before this Court that pursuant to a continuing conspiracy of fraud and racketeering, Davis, Veliotis and Gilliland perjured themselves at their 205 examinations by denying any knowledge of or the existence of any transferred Frigitemp funds. It is the Trustee's position in that action that the alleged perjury was intended to and did actually induce him to enter into the Settlement Agreement to the detriment of the Frigitemp estate. He requests access to those 205 transcripts and accompanying exhibits covered by the Settlement Agreement in order to pursue his claims of fraud and conspiracy against the defendants, including IDT, General Dynamics, Davis, Veliotis and Gilliland. In particular the Trustee seeks access for himself and his counsel to inspect and copy all sealed examination transcripts and seeks the authority to disclose, under seal, the

contents of those transcripts to the district court and to the parties to the underlying District Court Action.

*Positions of the Parties*

The Trustee contends that his present application for access to the sealed materials is sanctioned by the terms of the Settlement Agreement itself. As already noted, that agreement (along with the Protective Order) affords the Trustee access for use solely in the discharge of his statutory duties. No one disputes this.

According to the Trustee, his statutory duties include prosecuting Frigitemp's claim in the underlying District Court Action. Since much of Frigitemp's case turns on the existence of allegedly perjurious testimony embodied in the sealed 205 examination transcripts, the Trustee maintains access to those transcripts for use in the district court is requested so that the Trustee can discharge his statutory duties. Therefore, the Trustee concludes that granting him access to the transcripts would merely serve to enforce the terms of the Settlement Agreement itself.

Davis, Gilliland, Veliotis and IDT (collectively the "Objectants") oppose the Trustee's application. In their view access should be denied, or at least delayed for several reasons. Veliotis argues that the Trustee's failure to substantiate by "clear and convincing evidence" the merits of the Trustee's fraud claim which underlies the District Court Action requires that the Trustee's request for access be denied. Moreover, Veliotis maintains, the absence of any allegations of fraudulent inducement in the Trustee's application for access similarly demands that the Trustee's request for access be denied. IDT and Davis further oppose the Trustee's application on the grounds that the District Court Action, and therefore the application itself, is in violation of the Settlement Agreement which granted a release of all claims held by Frigitemp against (most or all) of the defendants named in the District Court Action. Until such time as the Settlement Agreement is vacated, they contend, the Trustee's proposed use of the sealed materials should be enjoined. IDT and Davis also maintain that regardless of any fraud, the Trustee executed the Settlement Agreement "with his eyes open" and therefore cannot now be heard to say that he was fraudulently induced into executing the Settlement Agreement. Finally, Gilliland argues that the Trustee's failure to serve him in either this proceeding or in the underlying District Court Action precludes the Trustee from seeking access to any 205 transcripts of Gilliland's testimony.

In addition, the Objectants contend that access should be delayed until certain motions now pending to dismiss the District Court Action on procedural grounds are decided. The Objectants maintain that these motions do not address the merits of the Trustee's case, however, if granted, the need for access would be obviated. Therefore, given the fact that the Trustee has failed to demonstrate a compelling need for the transcripts at this time, the Objectants conclude that any decision on his application should be put off until it is clear that the District Court Action will proceed on the merits.

*Issue*

Whether the Trustee's proposed use of the sealed transcripts and exhibits fall within the scope of his statutory duties, and if so, whether access should be delayed until pending motions to dismiss in the underlying District Court Action are determined.

*Discussion*

■ The scope of a Trustee's statutory duties under the Bankruptcy Act is broad. His obligations include prosecuting whatever claims may be held by the estate against third parties. In the words of one court:

> The duties of the trustee are prescribed by the bankruptcy act, and he must institute litigations whenever it is necessary for the purpose of collecting or reducing to money the assets of the bankrupt estate. By this obligation it is not meant that he should burden the assets of the estate with costs and expenses arising out of all manner of questions that may

be presented for litigation. There should be probable cause at least for believing that a right of action exists before the estate is so burdened.

*In re Meadows, Williams & Co.*, 181 F. 911 (D.C.N.Y.1910).

Veliotis argues that the Trustee's application for access to the sealed materials should be denied inasmuch as he has failed to prove to this Court, by "clear and convincing" evidence, the merits of the estate's claim of fraud which underlies the District Court Action. The essence of this argument seems to be that while litigating estate claims which the estate may hold against third parties falls within the bounds of the Trustee's statutory duties, the Trustee, by "clear and convincing" evidence, must first establish the existence of a cause of action before litigation may proceed. Failing that, the Trustee cannot be said to be acting to discharging his statutory duties. Since in this instance, according to Veliotis, the Trustee has failed to establish a cause of action by clear and convincing evidence, his request for access in order to effectively litigate that cause of action cannot be viewed as furthering the discharge of his statutory duties.

■ In the Court's opinion, the thrust of Veliotis' argument is misplaced. The focus in this instance is not whether the Trustee can establish the merits of the underlying fraud claim. As all concede, the determinative standard is merely whether the access to and use of the sealed materials is in furtherance of the discharge of the Trustee's statutory duties. The above passage makes it clear that those duties include liquidating claims through litigation where there is simply "probable cause ... for believing that the right of action exists." *Id.; Accord,* 2A *Collier on Bankruptcy* ¶ 47.05 (14th ed. 1978) (citing *Meadows*). This is an entirely different and lower threshold of proof than the "clear and convincing" standard Veliotis, and presumably the other Objectants, would impose on the Trustee. Therefore, the fact that the Trustee has failed to make his case by clear and convincing evidence in this Court is irrelevant.

■ Moreover, the fact that the Trustee does not, in his application, specifically aver that he was fraudulently induced into executing the Settlement Agreement is equally irrelevant. Both the Trustee's application and the record on the hearing in connection with the Trustee's application for access, make it clear that the Trustee is seeking access in order to prosecute the complaint in the underlying the District Court Action. The application therefore satisfactorily demonstrates that access is requested in furtherance of the Trustee's statutory duty to liquidate claims through litigation which are held by the estate—clearly a basis for which access may be granted. Veliotis' contentions to the contrary notwithstanding, the Trustee, in his application, was not required to plead any specific element of actionable fraud.

The crucial inquiry therefore is whether the standard of "probable cause" as outlined above exists to justify the Trustee's suit in the district court. In the absence of such probable cause, the Trustee's action would fall outside the scope of his statutory duties and therefore his application for access should be denied. In the *Meadows* case, which first established the rule of "probable cause", the court declined to prevent the trustee from continuing an action in state court against a third party, even though the court itself expressed some doubt as to whether the trustee would ultimately succeed in state court. The petitioner in that case sought to compel the trustee to accept a proposed compromise rather than litigate the claim. The court, in denying the petitioner's prayer for relief, noted:

> The affidavits of counsel for the trustee ... state that in his judgment a prima facie cause of action exists. In view of such affidavits and the rule hereinabove stated, applying to actions brought by trustees in bankruptcy, I must deny the application of the petitioner; ...

*Meadows* at 912; *See also In re Macloskey,* 66 F.Supp. 610 (D.C.N.J.1946).

In *Meadows* the court relied on counsel's affidavits and counsel's judgment that a prima facie cause of action existed to justify litigating a claim rather than accepting a proposed compromise. In the case at bar, in addition to the representations made both by the Trustee and his counsel regarding the merits of the claim underlying the District Court Action, the Court notes that on September 6, 1983, a criminal indictment against Davis, Lee, Veliotis and Gilliland was handed down in this district. The indictment charges them, *inter alia*, with racketeering, wire fraud, mail fraud, bankruptcy fraud and false declarations in a bankruptcy case. The indictment details the financial transactions described by the Trustee and also charges that certain perjurious statements were made by Veliotis and Gilliland in connection with Frigitemp's bankruptcy proceeding. Although an indictment is not proof that a crime was committed, it is a determination by an independent body that probable cause that a crime has been committed exists. *U.S. v. Calandra*, 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974). In view of any evidence to the contrary, it is also sufficient to convince this Court that the Trustee does have probable cause for believing that a right of action exists against the defendants named in the underlying District Court Action. Therefore the District Court Action commenced by the Trustee does fall within the scope of his statutory duties.

Nevertheless, IDT and Davis insist that until the Settlement Agreement is vacated both, the District Court Action and the Trustee's application should be deemed in violation of the general release provisions of that Agreement and the relief sought before this Court under the application denied. In addition they allege that the detailed investigations and negotiations which culminated in the Settlement Agreement preclude any inference that the Trustee could have been fraudulently induced into executing the Settlement Agreement. However these arguments are also not dispositive of the issue at hand. In the Court's opinion, the integrity and validity of the Settlement Agreement need not be tested in a separate action before the Trustee's District Court Action may proceed. Both matters can and should be addressed before one court in one proceeding. *See Schine v. Schine*, 254 F.Supp. 986 (S.D.N.Y.1966). The existence of the Settlement Agreement, therefore, does not preclude the Trustee from commencing, in good faith, an action based on the allegations underlying his complaint in the district court, or from requesting access to the sealed materials. *See Id.*[3]

Moreover, to merely allege that the Trustee executed the Settlement Agreement with "his eyes open" and therefore could not have been fraudulently induced into executing the Settlement Agreement can not, without more, serve to bar access to the sealed materials. In the first place, such allegations go to the merits of the Trustee's fraud claim which is not the issue before this Court and which should only be decided in the underlying District Court Action. As already mentioned, the inquiry in this instance is merely whether there is probable cause against those named in the underlying District Court Action. Whether the Trustee will ultimately succeed on the merits is not for this Court to decide.

Moreover, even if this Court were to treat the substance of these allegations as bearing on the issue of "probable cause", no evidence has been introduced to show that the Trustee would be precluded from making his case on the merits in the district court. Therefore, notwithstanding these allegations, access must be allowed.

---

**3.** Furthermore, the fact that the agreement contains a release by the estate of all claims against Davis, IDT and others does not necessarily strip the estate of its right to pursue its fraud action in the district court against those who may have received releases under the agreement. *See Publicker v. Shallcross*, 106 F.2d 949 (3rd Cir. 1939), *cert. denied*, 308 U.S. 624, 60 S.Ct. 379, 84 L.Ed. 521 *cited with approval in, Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944).

Apart from the substantive arguments against access raised by the various Objectants, this Court must also reject the suggestion made by the Objectants that any action on the Trustee's application by this Court be delayed until the pending motions to dismiss the District Court Action are decided and the action is set to proceed on the merits. The Objectants would have the Court balance their interests in denying the Trustee access to the materials against the Trustee's need for access to the materials. The Settlement Agreement, however, provides for no such balancing test. There is no limit on the Trustee's right of access other than that the Trustee use the materials solely in the discharge of his statutory duties. All other conditions to access relevant to the dispute have been bargained away. Indeed, to delay access until such time as the Trustee's case proceeds on the merits could diminish the possibility that at some point prior to that time the Trustee might elect to pursue or accept a settlement or to abandon his claim against some or all of the defendants in the District Court Action. Presumably the sealed transcripts are the key to the success or failure of the Trustee's case. Immediate access would put the Trustee in the best position not only to prosecute his case on the merits, but also to gauge the probability of success and therefore the propriety of abandoning or settling the estate's claims against some or all of the defendants named in the District Court Action. This is so notwithstanding the possibility that the District Court Action brought in Delaware might be dismissed on procedural grounds and the Trustee might then be forced to commence litigation against some or all of the defendants elsewhere. The request to delay access is therefore without merit.

Finally, the Court rejects Gilliland's argument that the transcripts containing his 205 testimony be withheld on the grounds that he has not been served either in the underlying action or with the Trustee's application for access.[4] Under the terms of the Settlement Agreement notice of the Trustee's application for access was to be given only to IDT and not to Gilliland or any other beneficiary of the agreement. Furthermore the fact that Gilliland, a named defendant and alleged coconspirator in the District Court Action has not yet been served in that action has no bearing on whether access to his 205 transcript is in furtherance of the discharge of the Trustee's statutory duty to prosecute the underlying claim in the district court. The requisite "probable cause" to support the Trustee's decision to litigate the District Court Action has been established. The relevance of Gilliland's 205 transcripts to that action is an issue for the district court to decide. Absent any showing that the Trustee's request for that transcript is made in bad faith, the court must presume that based on the Trustee's application access is proper and should be allowed.[5]

*Conclusion*

Based upon the foregoing, the Trustee's request for access is granted.

It is so ordered.

---

**4.** According to the Trustee, Gilliland has thus far avoided service in the underlying action.

**5.** In his application for access, the Trustee represents that any disclosure following a review of the transcripts will be made in submissions filed under seal with the district court. This representation arguably may be inconsistent with the language of the Settlement Agreement which requires that copies and extracts of the sealed materials be kept under lock and seal with the Trustee's counsel. However, to the extent there is a proposed deviation from the Settlement Agreement, the deviation is slight and, moreover, has not been opposed by the Objectants. Therefore the copies and extracts of the transcripts (and related exhibits) may be submitted under seal to the district court, with that court's approval.