**BELLEFONTE RE INSURANCE COMPANY, Plaintiff,**

v.

**ARGONAUT INSURANCE COMPANY, Defendant.**

**UNIVERSAL REINSURANCE COMPANY, Plaintiff,**

v.

**ARGONAUT INSURANCE COMPANY, Defendant.**

**Nos. 82 Civ. 8068(RLC), 82 Civ. 8069(RLC).**

United States District Court, S.D. New York.

Jan. 27, 1984.

Miller, Singer, Michaelson & Raives, P.C., New York City, for plaintiffs; Robert M. Raives, Lawrence I. Brandes, Clifford H. Schoenberg, Steven S. Honigman, New York City, of counsel.

Butler, Rubin, Newcomer, Saltarelli & Boyd, Winston & Strawn, Chicago, Ill., Donovan, Leisure, Newton & Irvine, New York City, for defendants; James J. Rubin, New York City, of counsel.

ROBERT L. CARTER, District Judge.

In 1974, plaintiffs in these consolidated actions, Bellefonte Re Insurance Company ("Bellefonte") and Universal Reinsurance Company ("Universal" or "URC") contracted to reinsure defendant Argonaut Insurance Company ("Argonaut" or "AIC") on business generated by Resources Facilities, Inc. ("RFI"), a managing general agent of Argonaut. Both plaintiffs signed Quota Share contracts whereby they agreed to reinsure defendant for 5% of the first

$100,000 of loss on each risk. Subsequently, Bellefonte also agreed to reinsure 5% of the losses in excess of $100,000, up to $1,000,000. Plaintiffs allege that these contracts should be rescinded because defendant failed to disclose material facts which it had a duty to disclose at the time plaintiffs were solicited to provide the reinsurance. Specifically, plaintiffs allege that defendant agreed to use RFI as a managing general agent only after demanding and receiving a letter from Integrated Resources, Inc., a company which at that time was planning to acquire RFI, which purported to indemnify Argonaut "for any financial loss or expense in connection with the business written by [RFI]...." Exh. 27 to Brandes Aff. Plaintiffs also contend that Frank Rovere, a vice president of Argonaut, recommended to his superiors that Argonaut not sign a managing agency agreement with RFI because he had heard rumors casting doubt upon the honesty of RFI's president. Plaintiffs maintain that the existence of the indemnification letter and the fact that Rovere made such a recommendation were both material to the risk to be reinsured and, therefore, that defendant's failure to disclose them entitles plaintiffs to recission of the contracts.

The issue presently before the Court on cross motions for summary judgment is whether plaintiffs' actions are barred by the settlement agreements both plaintiffs admittedly entered into with defendant, Universal in December, 1976 and Bellefonte in January, 1978. Defendant moves to dismiss the complaints and plaintiffs move for judgment that the settlement agreements do not apply to these claims or, alternatively, for judgment rescinding the settlement agreements on the ground that they were fraudulently induced.

*Discussion*

A careful reading of the two settlement agreements, styled as covenants not to sue, convinces the Court that, if valid, they bar plaintiffs from suing to rescind these rein-

surance contracts or to contest their liability thereunder.

Both agreements carefully designate the contracts at issue. They are the same contracts plaintiffs seek to rescind here. Both agreements then state: [1]

> URC on the one side and AIC on the other side, each to each other, on behalf of themselves, and each of their respective successors and assigns, if any, hereby covenants and agrees, apart from the rights and obligations created by or continued under this Agreement, not to demand arbitration or commence litigation of any kind any where in the world and agrees to refrain forever from instituting, prosecuting, collecting or in any way aiding or proceeding directly or indirectly, subject to the reservation relating to agents of the persons or entities named or otherwise identified herein, against one another or any of their respective officers, directors, employees, affiliated companies, stockholders, parents, predecessors, successors and assigns upon any and all claims, demands and liability of every kind and nature, known and unknown, arising from or relating to any act, omission to act or transaction which occurred prior to the execution of this Agreement in connection with any and all matters *arising out of the dispute regarding the Quota Share contract of reinsurance.*

Exh. 6 to Brandes Aff. (Court's emphasis). The "dispute regarding the Quota Share contract" is defined in the Universal contract as "a dispute regarding URC's liability to AIC under the contract of reinsurance described above." *Id.* It is defined in the Bellefonte agreement as "a dispute regarding the validity of such contracts of reinsurance and the balances due to AIC thereunder." Exh. 5 to Brandes Aff.

▬ In clear and unambiguous language of remarkable breadth, these agreements, which were negotiated and drafted by experienced insurance executives and

---

**1.** This is the text of the Universal agreement. The wording of the Bellefonte agreement differs to a degree too slight to warrant reproducing the other text. The Bellefonte agreement also covers the Excess contract as well as the Quota Share contract.

their attorneys, prohibit the parties from commencing any and all litigation over their liability under these contracts. Plaintiffs do not deny that this litigation is over their liability under the reinsurance contracts covered by the settlement agreements, but argue that they can prove that the parties did not intend those agreements to forestall litigation based on the specific claims stated in their complaints. Such an excursion into the parol evidence is unwarranted, however. When, as here, sophisticated counsel in a commercial context draft a contract that presents no interpretive difficulties, the Court will not look beyond the four corners of the document to discern what the parties meant. *Locafrance U.S. Corp. v. Intermodal System Leasing, Inc.*, 558 F.2d 1113, 1115 (2d Cir.1977); *see, Dart Industries Co. v. Westwood Chemical Co.*, 649 F.2d 646, 648 (9th Cir.1980); *Crow v. P.E.G. Construction Co.*, 156 Cal.App.2d 271, 319 P.2d 47, 50–51 (2d Dist.1957); *Oxford Commercial Corp. v. Landau*, 12 N.Y.2d 362, 239 N.Y.S.2d 865, 190 N.E.2d 230 (1963).[2] Although the parties may not have been considering defendant's failure to disclose the indemnification or the Rovere recommendation at the time they entered into the settlement agreement, they deliberately worded their mutual covenants not to sue comprehensively. If plaintiffs had wanted to reserve a right of action for failure to disclose information material to the risk, they could and should have included appropriate words of reservation or, at the very least, excluded "unknown ... omission[s] to act" from the covenants not to sue. *In re Schaefer*, 18 N.Y.2d 314, 274 N.Y.S.2d 869, 221 N.E.2d 538 (1966).

■ Plaintiffs argue that the settlement agreements are, indeed, ambiguous and that extrinsic evidence should be admitted to aid in their interpretation. *Schering Corp. v. Home Insurance Co.*, 712 F.2d 4, 9 (2d Cir.1983). As plaintiffs see it, the ambiguity lies in the meaning of "dispute" as used in the agreements. Since the cove-

nants not to sue are limited to "matters arising out of the dispute", and the agreement puts only "a short-hand label on the subject-matter of the 'dispute' in question," Plaintiffs' Memorandum at 105, plaintiffs conclude that parol evidence is admissible to determine precisely what dispute the parties intended to settle.

This argument is untenable. The agreements specifically define the disputes as disputes over plaintiffs' liability under the reinsurance contracts, and in the case of Bellefonte, over the validity of those contracts. Although plaintiffs disparage these definitions as "short-hand label[s]", they are clear and unambiguous nonetheless. Plaintiffs would ignore the agreements' own statements of what was in dispute between the parties, yet read the agreements as limiting the broad language of the covenants not to sue to a specific dispute nowhere mentioned. Put another way, plaintiffs would have the Court conclude that these professionally drafted settlement agreements (1) were not intended to prevent litigation over plaintiffs' liability on the reinsurance contracts, in general, but only with respect to a specific controversy affecting their liability; (2) expressed this intent by using the phrase "arising out of the dispute"; (3) contained no definition of what controversy the agreements were actually intended to settle; but (4) did contain a definition of "dispute" that was *not* intended to define the controversy limited by the use of that word. The Court declines to put such an awkward, illogical and artificial interpretation on a clear and straightforward document. The Court will not strain to find doubt and ambiguity where none exists simply to facilitate the admission of parol evidence. The purpose of introducing such evidence is to clear away confusion, not to generate it. *Spector v. Sovereign Construction Co.*, 45 A.D.2d 673, 356 N.Y.S.2d 79 (1st Dep't. 1974).

---

**2.** The Bellefonte settlement agreement, by its terms is to be interpreted according to New York law, the Universal agreement under the law of California. The law of the two states is no different on these issues, as the cited cases indicate.

The Court is also unpersuaded that defendant procured the settlement by fraud. Plaintiffs allege no new misrepresentation in connection with the negotiation or execution of the settlement agreements. The only fraud alleged is defendant's failure to disclose the indemnification letter and the Rovere recommendation, the same omission that underlies plaintiffs' suit to rescind the reinsurance contracts. Through the broad and comprehensive language of the settlement agreements, plaintiffs covenanted not to bring suit challenging the validity of these reinsurance contracts or their liability on them, regardless of the theory on which they based their claim that the contracts were voidable or that they were not liable. One aspect of that covenant was necessarily a promise not to sue for recission on the ground that material information was not disclosed. Plaintiffs cannot freely, and for consideration, promise not to sue for failure to disclose material facts and then claim that the promise was fraudulently induced because material information was, in fact, not disclosed. A claim for fraudulent non-disclosure, like any other claim, can be settled without litigation. It is not, nor could it be, a prerequisite to such a settlement that any party admit wrongdoing or disclose what he had theretofore kept to himself. *Alleghany Corp. v. Kirby*, 333 F.2d 327, 333 (2d Cir.1964), *cert. dismissed*, 384 U.S. 28, 86 S.Ct. 1250, 16 L.Ed.2d 335 (1966); *see, Korn v. Franchard Corp.*, 388 F.Supp. 1326, 1333 (S.D.N.Y.1974) (Conner, J.). Defendant's alleged failure to disclose information material to the risks covered by reinsurance contracts does not invalidate a settlement of claims growing out of those contracts if the parties deliberately drafted a covenant not to sue broad enough in its terms to encompass claims based on non-disclosure.

Here, as noted above, experienced corporate executives, advised and assisted by sophisticated counsel, agreed to a settlement including a covenant not to sue that extends to claims based on non-disclosure of material facts. Plaintiffs were not obligated to sign so comprehensive a settlement and could easily have narrowed its scope, but having signed it, they cannot claim fraud in the inducement of that settlement simply because one of the claims on which they agreed not to sue may have entitled them to greater relief than they bargained for.

Defendant's motion for summary judgment dismissing the complaint is granted.

IT IS SO ORDERED.