BELLEFONTE RE INSURANCE
COMPANY, Plaintiff,

v.

ARGONAUT INSURANCE COMPANY,
Defendant.

UNIVERSAL REINSURANCE
COMPANY, Plaintiff,

v.

ARGONAUT INSURANCE COMPANY,
Defendant.

Nos. 82 Civ. 8068, 82 Civ. 8069.

United States District Court,
S.D. New York.

May 4, 1984.

See also, D.C., 581 F.Supp. 241.

Miller, Singer, Michaelson & Raives,
P.C., New York City, for plaintiffs; Robert
M. Raives, Lawrence I. Brandes, Clifford
H. Schoenberg, Steven S. Honigman, New
York City, of counsel.

Butler, Rubin, Newcomer, Saltarelli &
Boyd, Winston & Strawn, Chicago, Ill.,
Donovan Leisure Newton & Irvine, New
York City, for defendants; James J. Rubin,
of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Both plaintiffs in these consolidated actions, Bellefonte Re Insurance Company ("Bellefonte") and Universal Reinsurance Company ("Universal"), contracted separately to reinsure defendant, Argonaut Insurance Company ("Argonaut"), on business generated by one of defendant's managing general agents, Resources Facilities, Inc. ("RFI"). Subsequently, the parties became embroiled in a controversy over the validity of the reinsurance contracts and over plaintiffs' liability to defendant under those contracts. These disputes were settled by written agreements,[1] both of which contained substantially identical mutual covenants not to sue. The parties promised not to commence any litigation on claims

> arising from or relating to any act, omission to act or transaction which occurred prior to the execution of this Agreement in connection with any and all matters

1. The Universal-Argonaut agreement was signed in December, 1976, the Bellefonte-Argonaut agreement in January, 1978.

arising out of the dispute regarding the ... contracts of reinsurance.[2]

Nevertheless, five years after the Bellefonte-Argonaut settlement and six years after the Universal-Argonaut settlement, plaintiffs brought suit to rescind the reinsurance contracts *ab initio* on the ground that information material to the risks reinsured was not disclosed at the time the contracts were negotiated. Specifically, plaintiffs alleged that defendant had not informed them that Argonaut had employed RFI only after soliciting a letter from a third party that purported to indemnify Argonaut for any loss which resulted from the business generated by RFI. Plaintiffs also alleged that defendant had failed to disclose that an Argonaut vice-president, Frank Rovere, recommended that Argonaut not contract with RFI because the honesty of RFI's president was suspect.

Acknowledging the apparent bar of the covenants not to sue, plaintiffs sought, in the same complaints, judgment rescinding the settlement agreements or, alternatively, a holding that the covenants did not bar suits premised on the non-disclosure of material facts. Plaintiffs argued, first, that the settlements had been fraudulently induced. They alleged no new misrepresentation in connection with the negotiation or execution of the agreements, but contended that the same failure to disclose material information which entitled them to rescission of the reinsurance contracts tainted the settlement agreements as well. In addition, plaintiffs argued that the "dispute regarding the ... contracts of reinsurance" did not concern defendant's alleged failure to disclose the indemnification letter or the Rovere recommendation, and therefore that the covenants not to sue did not bar suit to rescind the reinsurance contracts on that particular ground.

In an opinion dated January 27, 1984,[3] the court granted defendant's motion for summary judgment dismissing the complaint. The court ruled that the covenants not to sue expressed, in clear and unambiguous language, the parties' intention that there be no further litigation concerning the validity of, or the parties' liability under, the contracts of reinsurance, regardless of whether a claim was based on non-disclosure of material facts at the time the reinsurance contracts were negotiated, or any other theory. Because defendant was not obliged to admit to such non-disclosure in order to negotiate a settlement, and its failure to do so was the only fraud alleged in the procurement of the settlement, the court also rejected plaintiffs' claim that they were defrauded into settling.

Presently before the court is defendant's motion for summary judgment on its counterclaims, alleging that plaintiffs breached the covenants not to sue contained in the settlement agreements by suing for rescission of the reinsurance contracts. As all plaintiffs' claims were dismissed, defendant has incurred no loss from the alleged breach save the cost of defending the suit. It is these litigation expenses, including attorney's fees, that defendant seeks to recover.

At early common law, a covenant not to sue, unlike a release, was no defense to a suit brought in breach of the covenant. The covenantee's only remedy was a suit for damages in which he could recover any amount that had been recovered against him in the breaching action. The obvious inefficiency of this two step process led the courts of equity to enjoin suits prohibited by a covenant not to sue, and the law courts eventually came to allow the covenant to be pleaded as a bar. *See* 4 *Corbin on Contracts* § 932 at 744 (1951). Thereafter, suits seeking damages for the breach of a covenant not to sue became rare, and few cases have considered whether a defendant who has successfully interposed a covenant not to sue as a bar to an action against him may recover his litigation ex-

---

**2.** Bellefonte entered into both Quota Share and Excess Share reinsurance contracts with Argonaut. Universal signed only a Quota Share agreement.

**3.** *Bellefonte Re Insurance Co. v. Argonaut Insurance Co.,* 581 F.Supp. 241 (S.D.N.Y.1984) (Carter, J.).

penses as damages for the breach. Some of the courts that have addressed the question have held that attorney's fees and other incidental costs of litigation are not recoverable absent express statutory or contractual authorization. *Child v. Lincoln Enterprises, Inc.*, 51 Ill.App.2d 76, 200 N.E.2d 751, 754 (4th Dist.1964). Others, notably the Sixth Circuit in *Anchor Motor Freight v. International Brotherhood of Teamsters, Local 377*, 700 F.2d 1067, 1071–72 (6th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 81, 78 L.Ed.2d 92 (1983), have held that the traditional reluctance to award fees and costs is inapplicable to a suit involving breach of a contract whose sole aim is to bar suit because litigation expenses are not recovered incidentally in such a case, but as the only measure of actual damages incurred by the aggrieved party.

The Universal and Bellefonte settlement agreements are governed by California and New York law respectively.[4] The parties have not cited, nor has the court found, any case from either jurisdiction which states the law on this question. In *Artvale, Inc. v. Rugby Fabrics Corp.*, 363 F.2d 1002 (2d Cir.1966), however, when the Second Circuit confronted the issue, although it declined to state whether it relied on state or federal law, it found that "nothing in New York law would lead us to a decision different from that we would independently reach." *Id.* at 1007. Accordingly, the court has treated *Artvale* as expressing the Second Circuit's view of the relevant New York law. Lacking a California precedent and finding nothing in California law that would dictate a contrary approach, the court has also applied *Artvale* to its analysis of defendant's claim against Universal.[5]

■ In *Artvale*, Judge Friendly began with the assumption that whether the

breach of a covenant not to sue entitles the injured party to recover litigation expenses from his adversary depends upon "what the parties intended by their contract." *Id.* at 1008. From this premise he concluded that a covenant could be drafted so as to make clear that its breach would entail liability for such expenses, but that as a matter of contractual interpretation,

> to distill all this out of the usual formal covenant would be going too far; its primary function is to serve as a shield rather than as a sword.... In the absence of contrary evidence, sufficient effect is given to the usual covenant not to sue if, in addition to its service as a defense, it is read as imposing liability only for suits brought in obvious breach or otherwise in bad faith....

*Id.* Thus, absent contractual language to the contrary, a party who brings an action which is ultimately held to be in breach of a covenant not to sue, but which was based on a reasonable and good faith argument either that the covenant did not bar the suit or that the covenant was obtained by unfair means, is not liable for his opponent's litigation expenses. *Id.; see also Borbely v. Nationwide Mutual Insurance Co.*, 547 F.Supp. 959, 980–81 (D.N.J.1981); *Le Cordon Blue, S.A. v. BPC Publishing Ltd.*, 451 F.Supp. 63, 71 (S.D.N.Y.1978) (Lumbard, J.).

The covenants at issue here do not, by their own terms, expressly impose liability for litigation expenses in the event of a breach. Defendant has not suggested, nor does anything in the record indicate, that plaintiffs brought this action to harass defendant, or otherwise in subjective bad faith of a similar nature. The only issue to be considered, then, is plaintiffs' objective good faith, that is, the reasonableness of plaintiffs' contentions that the settlement agreements were fraudulently induced and

---

**4.** Each settlement agreement contains a choice of law clause.

**5.** Plaintiffs contend that *Winchester Drive-In Theatre, Inc. v. Warner Bros. Pictures Distributing Corp.*, 358 F.2d 432 (9th Cir.1966), states California law and that it requires a party seek-

ing damages for breach of a covenant not to sue to meet a stricter test than does *Artvale*. The *Artvale* court, however, read *Winchester* as deciding the issue as a matter of federal law and, moreover, it treated *Winchester* as a precedent for its own approach. 363 F.2d at 1008 & n. 2.

that their suits to rescind the reinsurance contracts were without the scope of the covenants not to sue. Only if neither of these arguments could have appeared plausible to a reasonable person in plaintiffs' position, familiar with the relevant facts and law, would a finding of objective bad faith or, in the language of the *Artvale* opinion, a finding that the suits to rescind the reinsurance contracts were in "obvious breach" of the covenants not to sue, be warranted.

Although the court rejected plaintiffs' argument that defendant's failure to reveal the indemnification letter and the Rovere recommendation was fraud entitling plaintiffs to recission of the settlement agreements, it cannot be said that plaintiffs' position was so patently and indisputably incorrect as to warrant the imposition of litigation costs under the *Artvale* standard. In its previous opinion, the court held that since plaintiffs had covenanted not to challenge the validity of the reinsurance contracts on any basis, including a failure to disclose information material to the risks reinsured, they could not claim that their promise had been fraudulently induced merely because such information had, in fact, not been disclosed. Plaintiffs had maintained that under California law and the custom and practice of the insurance industry, defendant could not extract such a promise without first making full disclosure of any material information it had previously withheld. Although that argument is, in the court's view, incorrect, it is certainly not frivolous to a degree indicative of bad faith.

The court is less certain that the same can be said of plaintiffs' argument that their suits to rescind the reinsurance contracts were not within the scope of the covenants not to sue, even if the latter were not vitiated by fraud. As noted above and explained in detail in the court's prior opinion, the covenants were drafted so as to make plain and explicit the parties' intention that all suits challenging the validity of the reinsurance contracts be barred. Plaintiffs' contention that the covenants could not be so construed the court

found to depend upon an "awkward, illogical and artificial interpretation [of] a clear and straightforward document." *Bellefonte Re Insurance Co. v. Argonaut Insurance Co.*, 581 F.Supp. 241 at 243 (S.D. N.Y.1984) (Carter, J.).

Nevertheless, as plaintiffs had at least one reasonable good faith argument underlying their insistence that defendant should not be permitted to interpose the settlement agreements as a bar to plaintiffs' suits for recission of the reinsurance contracts, those suits were not in "obvious breach" of the covenants not to sue. Therefore, defendant's counterclaims are dismissed.

IT IS SO ORDERED.