757 F.2d 523
 BELLEFONTE RE INSURANCE COMPANY, Plaintiff-Appellant-Cross-Appellee,
v.
ARGONAUT INSURANCE COMPANY, Defendant-Appellee-Cross-Appellant.
UNIVERSAL REINSURANCE COMPANY, Plaintiff-Appellant-Cross-Appellee,
v.
ARGONAUT INSURANCE COMPANY, Defendant-Appellee-Cross-Appellant.
 Nos. 385, 392, 490, Docket 84-7582, 84-7584 and 84-7590.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 19, 1984.
Decided March 18, 1985.
 
 Lawrence I. Brandes, New York City (Robert M. Raives, Clifford H. Schoenberg, Steven S. Honigman, Miller, Singer & Raives, P.C., New York City, on brief), for plaintiffs-appellants-cross-appellees.
 James I. Rubin, Chicago, Ill. (Brigitte Schmidt Bell, Robert N. Hermes, Butler, Rubin, Newcomer, Saltarelli & Boyd, Harold C. Wheeler, Winston & Strawn, Chicago, Ill. Gibson, Dunn & Crutcher, New York City, on brief), for defendant-appellee-cross-appellant.
 Before MESKILL, KEARSE and CARDAMONE, Circuit Judges.
 KEARSE, Circuit Judge.
 
 
 1
 Plaintiffs Bellefonte Re Insurance Company ("Bellefonte") and Universal Reinsurance Company ("Universal") appeal from final judgments of the United States District Court for the Southern District of New York, Robert L. Carter, Judge, see 581 F.Supp. 241 (1984), dismissing their complaints seeking rescission of reinsurance contracts and settlement agreements entered into with defendant Argonaut Insurance Company ("Argonaut") on the ground that Argonaut procured the reinsurance and settlement agreements by means of fraudulent nondisclosures. The district court granted Argonaut's motion for summary judgment dismissing the complaints on the ground that the settlement agreements clearly barred plaintiffs from asserting their only alleged basis for rescission of either the reinsurance contracts or the settlement agreements. Id. at 244. The court dismissed Argonaut's counterclaims for damages for plaintiffs' breach of the covenants not to sue contained in the settlement agreements on the ground that the present actions had not been brought in bad faith or in obvious breach of the covenants. See 586 F.Supp. 1286 (1984).
 
 
 2
 On appeal, plaintiffs contend that they were induced to enter into both the reinsurance contracts and the settlement agreements by Argonaut's nondisclosures of material facts, and that under the custom and practice in the reinsurance industry, the settlement agreements cannot be read to bar rescission on grounds of fraud. In addition, Universal contends that the district court erred in not taking into account its evidence that the alleged fraudulent nondisclosures on the basis of which it sought rescission of its settlement agreement were not raised in its presettlement dispute with Argonaut. In its cross-appeal, Argonaut contends that the court should have upheld its counterclaims for the cost of defending the present actions because the covenants not to sue precluded plaintiffs from commencing litigation of any kind.
 
 
 3
 Finding no merit in any of the parties' contentions, we affirm.I. BACKGROUND
 
 
 4
 In 1973, Argonaut entered into an agreement with Resources Facilities, Inc. ("RFI"), to act as a "front" company for the writing of insurance by RFI, i.e., to lend its name to the issuance of insurance policies written by RFI; RFI was to be considered Argonaut's managing general agent ("MGA") for such insurance. Pursuant to this agreement, RFI was to pay Argonaut 10% of the premiums obtained and was to obtain reinsurance; Argonaut was to retain 2 1/2% of the first $100,000 of exposure per risk. In 1974, Bellefonte and Universal, separately, entered into reinsurance contracts ("treaties") with Argonaut on the business written by RFI as Argonaut's MGA.
 
 
 5
 A. The Original Disputes and the Settlement Agreements
 
 
 6
 In February 1976, Argonaut sued RFI, charging it with a variety of contract violations and frauds. Soon thereafter, Universal and Bellefonte stopped making payments on losses to Argonaut arguably covered by the reinsurance contracts.
 
 1. Bellefonte's Claims
 
 7
 Bellefonte became involved in a dispute with Argonaut over the validity of the reinsurance contracts and the balances allegedly due to Argonaut from Bellefonte under those contracts. In January 1978, the two entered into a settlement agreement ("B/A Settlement Agreement") to resolve this dispute. In the B/A Settlement Agreement, which recited that Bellefonte and Argonaut were "involved in a dispute regarding the validity of [the RFI-related] contracts of reinsurance and the balances due to [Argonaut] thereunder," Bellefonte agreed to pay Argonaut a certain sum, and each party agreed not to sue the other in connection with, inter alia, "any and all matters arising out of the dispute regarding the [RFI-related] contracts of reinsurance." The covenant not to sue stated, in pertinent part, that Bellefonte and Argonaut agreed
 
 
 8
 not to demand arbitration or commence litigation of any kind anywhere in the world and agree[d] to refrain forever from instituting, prosecuting, collecting or in any way aiding or proceeding directly or indirectly ... upon any and all claims, demands and liability of every kind and nature known and unknown, arising from or relating to any act, omission to act or transaction which occurred prior to the execution of this Agreement in connection with any and all matters arising out of the dispute regarding the [RFI-related] contracts of reinsurance.
 
 2. Universal's Claims
 
 9
 Following Argonaut's institution of suit against RFI, Universal also became involved in a dispute with Argonaut. In December 1976, Universal and Argonaut entered into a settlement agreement ("U/A Settlement Agreement") to resolve this dispute. The U/A Settlement Agreement recited that the parties were "involved in a dispute regarding [Universal's] liability to [Argonaut] under the [RFI-related] contract of reinsurance"; it did not expressly mention a dispute as to the validity of that contract. Under this agreement, Universal agreed to pay Argonaut a certain sum; and each party agreed not to sue the other in connection with, inter alia, "any and all matters arising out of the dispute regarding the [RFI-related] contract of reinsurance." The covenant not to sue was virtually identical to the one included in the B/A Settlement Agreement described and quoted above.
 
 
 10
 B. The Present Disputes and the Proceedings Below
 
 
 11
 In December 1982, Bellefonte and Universal brought the present actions against Argonaut, each seeking rescission of its settlement agreement on the ground that Argonaut had fraudulently induced it to enter into the agreement by not disclosing relevant material facts that Argonaut had a duty to disclose. The complaints alleged that Argonaut had fraudulently induced plaintiffs to enter into the reinsurance contracts by failing to disclose, inter alia, that Argonaut had originally refused to do business with RFI because of the "unsatisfactory reputation" of RFI's president, and that Argonaut had no meaningful retention of risk in the RFI-generated business because it had demanded and received an indemnification against loss on that business. Plaintiffs contended that they would not have entered into the reinsurance contracts with Argonaut had they been given the undisclosed material information.
 
 
 12
 Plaintiffs urged the court to rescind the settlement agreements and the reinsurance contracts. Each complaint stated that the plaintiff "and Argonaut became involved in a dispute regarding the validity of the treaties and the balances, if any, allegedly due to Argonaut from" the plaintiff under the RFI reinsurance contracts. (Bellefonte Complaint p 40; Universal Complaint p 37.) Each plaintiff alleged that its presettlement
 
 
 13
 [d]ispute involved, inter alia, issues of mismanagement by RFI, late reporting of losses to [plaintiff] and Argonaut's failure to disclose the absence of a meaningful retention by it on the business written by RFI as its MGA, but the dispute did not "arise from or relate" in any way to Argonaut's failure to disclose the concealed material facts, which remained unknown to [plaintiff] at the time it executed the Settlement Agreement.
 
 
 14
 (Bellefonte Complaint p 41; Universal Complaint p 38.) Both plaintiffs and Argonaut moved for summary judgment.
 
 
 15
 In an opinion dealing with both actions, 581 F.Supp. 241, familiarity with which is assumed, the district court granted Argonaut's motion to dismiss the complaints, ruling that plaintiffs' actions were barred explicitly by the settlement agreements they had entered into with Argonaut. The court rejected Bellefonte's and Universal's arguments that Argonaut had procured the settlements by fraud. It noted that plaintiffs had alleged no new misrepresentations in connection with the negotiation and execution of the settlement agreements, but had alleged only "the same omission that underlies plaintiffs' suit to rescind the reinsurance contracts." Id. at 244. The court concluded that Bellefonte and Universal had settled their fraudulent nondisclosure claims:
 
 
 16
 In clear and unambiguous language of remarkable breadth, these agreements, which were negotiated and drafted by experienced insurance executives and their attorneys, prohibit the parties from commencing any and all litigation over their liability under [the reinsurance] contracts.
 
 
 17
 Id. at 242-43. Finding no ambiguity in the settlement agreements, the court refused to allow parol evidence to explain the agreements.
 
 
 18
 It rejected plaintiffs' contentions that considerations of public policy prevented the enforcement of such settlement agreements:
 
 
 19
 Plaintiffs cannot freely, and for consideration, promise not to sue for failure to disclose material facts and then claim that the promise was fraudulently induced because material information was, in fact, not disclosed. A claim for fraudulent non-disclosure, like any other claim, can be settled without litigation....
 
 
 20
 Here, ... experienced corporate executives, advised and assisted by sophisticated counsel, agreed to a settlement including a covenant not to sue that extends to claims based on non-disclosure of material facts. Plaintiffs were not obligated to sign so comprehensive a settlement and could easily have narrowed its scope, but having signed it, they cannot claim fraud in the inducement of that settlement simply because one of the claims on which they agreed not to sue may have entitled them to greater relief than they bargained for.
 
 
 21
 Id. at 244.
 
 
 22
 The court also rejected Universal's contention that the U/A Settlement Agreement should not be construed as broadly as the B/A Settlement Agreement because Universal's presettlement dispute had not involved the validity of the reinsurance contracts, and hence the U/A Settlement Agreement was not intended to settle the present claim of fraudulent nondisclosure. The court saw no significance in the different language of the two settlement agreements as to the nature of the disputes being settled.
 
 
 23
 Following the dismissal of the complaints, the court granted motions by Bellefonte and Universal for summary judgment dismissing Argonaut's counterclaims for damages for plaintiffs' alleged breaches of the settlement agreements' covenants not to sue. Finding no relevant authority from either New York or California law, by whose laws the B/A and U/A Settlement Agreements, respectively, were to be governed, the court concluded, on the authority of Artvale, Inc. v. Rugby Fabrics Corp., 363 F.2d 1002 (2d Cir.1966), that Argonaut was not entitled to recover because Bellefonte and Universal had not brought the actions in bad faith and they had "at least one reasonable good faith argument" underlying their suits. 586 F.Supp. at 1289.
 
 
 24
 These appeals and the cross-appeal followed.
 
 II. DISCUSSION
 A. The Dismissal of the Complaints
 
 25
 In an effort to escape the "clear and unambiguous language of remarkable breadth," 581 F.Supp. at 242, of the settlement agreements, both plaintiffs argue principally that those agreements were procured by Argonaut's fraudulent nondisclosure of facts regarding its relationship with RFI and that under the custom and practice in the reinsurance industry no agreement to settle reinsurance claims could be binding without full disclosure. In addition, Universal contends that there was a genuine issue of fact as to the scope of its settlement agreement because it had not, prior to entering into that agreement, disputed the validity of the reinsurance contract. We find no merit in any of these arguments.
 
 
 26
 As the district court correctly noted, "[t]he only fraud alleged" in support of the challenges to the validity of the settlement agreements "is defendant's failure to disclose the ... same omission that underlies plaintiffs' suit to rescind the reinsurance contracts." Id. at 244. Thus, plaintiffs' argument is, in essence, that where the parties have sought to settle a claim of fraud, they cannot be bound by a settlement agreement unless the alleged defrauder has made full disclosure to the other party prior to settlement. We know of no authority to that effect, and we find the contrary principle established by Alleghany Corp. v. Kirby, 333 F.2d 327 (2d Cir.1964), aff'd on rehearing, 340 F.2d 311 (1965) (en banc; per curiam), cert. dismissed, 384 U.S. 28, 86 S.Ct. 1250, 16 L.Ed.2d 335 (1966).
 
 
 27
 In Alleghany, a corporation sued to set aside the prior settlement of a stockholders' derivative action on the ground that the settlement had been obtained by fraudulent concealment of certain facts. Although many of the facts allegedly undisclosed prior to the institution of the derivative suit were then aired in hearings on the proposed settlement, there were other facts that the main corporate director defendant still failed to disclose. On the basis of the nondisclosure of the latter facts, the corporation later claimed that the settlement had been procured by fraud. We affirmed the district court's refusal to set aside the settlement, noting that "this fraud gave rise to the stockholders' suit and for this fraud [the main defendant director] paid the settlement price." 333 F.2d at 334. See also Korn v. Franchard Corp., 388 F.Supp. 1326, 1333 (S.D.N.Y.1975) (declining to set aside releases in securities fraud cases on the basis of fraud when the alleged fraud preceded the release by seven years and the record "fail[ed] to disclose any respect in which the decision of those class members who executed the release was affected by fraud"); cf. A.J. Tenwood Associates, Inc. v. United States Fire Insurance Co., 104 Misc.2d 467, 470-71, 428 N.Y.S.2d 606, 608 (Sup.Ct.N.Y. County 1980) (party that was aware of claim of overpayments prior to settlement could not use that issue as a basis for a claim of fraudulent inducement of the settlement itself); A.J. Industries, Inc. v. Ver Halen, 75 Cal.App.3d 751, 142 Cal.Rptr. 383, 388 (1977) (having obtained settlement agreement, party was estopped from asserting claims that were settled as basis for avoiding the settlement agreement).
 
 
 28
 None of the cases relied on by Bellefonte and Universal is contrary to the principle established by Alleghany. Rather those cases involved circumstances in which the settlement or release had been part of the very transaction attacked as fraudulently induced, or other circumstances in which it was clear that no semblance of a fraud claim had come to light before the claim at issue was settled and it was clear that the parties had not intended to settle fraud claims. See, e.g., Irving Trust Co. v. Deutsch, 73 F.2d 121, 126 (2d Cir.1934) (general release executed in settlement of contract claims did not bar suit for unrelated, unknown fraud claims), cert. denied, 294 U.S. 708, 55 S.Ct. 405, 79 L.Ed. 1243 (1935); Schine v. Schine, 250 F.Supp. 822, 826 (S.D.N.Y.1966) (release that was part of sale of a minority stock interest did not bar a suit for fraudulent inducement of the contract of sale) (see also 254 F.Supp. 986 (S.D.N.Y.), appeal dismissed, 367 F.2d 685 (2d Cir.1966)); Fisher v. Pennsylvania Life Co., 69 Cal.App.3d 506, 138 Cal.Rptr. 181, 184-85 (1977) (release that was part of stock transaction did not bar claim that transaction resulted from defendants' fraudulent concealment of facts); Sime v. Malouf, 95 Cal.App.2d 82, 212 P.2d 946, 962 (1949) (release that was part of plaintiff's sale of his interest in a joint venture did not bar claim that plaintiff was defrauded in the sale), amended on other grounds, 95 Cal.App.2d 115, 213 P.2d 788 (1950); Main v. Merrill Lynch, Pierce, Fenner & Smith Inc., 67 Cal.App.3d 19, 136 Cal.Rptr. 378, 386-88 (1977) (court declined to compel arbitration pursuant to clause contained in a lending agreement where both the clause and the lending agreement had allegedly been procured through fraud and undue influence). Thus, none of the cases supports plaintiffs' view that full disclosure by all parties is necessary before a claim of fraudulent inducement may be settled.
 
 
 29
 Plaintiffs' argument that the custom and practice in the reinsurance industry required Argonaut to disclose before settling and hence requires rescission of the settlement agreements fares no better. We agree with the district court that the settlement agreements clearly and unambiguously extended to "all claims ... of every kind and nature[,] known and unknown" in the parties' dispute over the RFI reinsurance contracts and hence encompassed the claims that the contracts were invalid because plaintiffs had been fraudulently induced to enter those reinsurance contracts. Thus, we need not reach the issue of whether there was a question as to industry custom, because "evidence of industry practice may not be used to vary the terms of a contract that clearly sets forth the rights and obligations of the parties." Croce v. Kurnit, 737 F.2d 229, 238 (2d Cir.1984) (citing, inter alia, In re Western Union Telegraph Co., 299 N.Y. 177, 184-85, 86 N.E.2d 162, 166 (1949)).
 
 
 30
 Nor do we find merit in Universal's contention that it raised a question of fact as to the scope of the U/A Settlement Agreement by presenting the affidavits of two of its officers stating that the validity of the Universal reinsurance contract had not been in dispute prior to the U/A Settlement Agreement and hence the present fraudulent inducement claims were not part of the "dispute" there settled. Although this contention perhaps finds some support in the U/A Settlement Agreement itself, which, unlike the B/A Settlement Agreement, does not expressly mention a dispute as to the validity of the reinsurance contract, the fact is that Universal's complaint expressly alleged that Universal and Argonaut had become involved in a dispute regarding, inter alia, the "validity" of the reinsurance contract. A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding. White v. Arco/Polymers, Inc., 720 F.2d 1391, 1396 (5th Cir.1983); see Mull v. Ford Motor Co., 368 F.2d 713, 715 (2d Cir.1966). Accordingly, the district court properly disregarded Universal's affidavits seeking to controvert its own pleading.
 
 
 31
 Finally, plaintiffs' argument that the settlement agreements are voidable not just because of nondisclosures but because of Argonaut's active concealment of material facts was not raised in the district court and we do not consider it here. We have reviewed all of plaintiffs' other arguments on their appeals and find them unpersuasive.
 
 B. The Dismissal of the Counterclaims
 
 32
 The cross-appeal's challenges to the district court's dismissal of the counterclaims for the expense of defending the present suits need not detain us long. Argonaut's contention is that the covenants were all-inclusive--covering "litigation of any kind"--and therefore literally barred all litigation, not just bad faith litigation. We agree with the district court that this question is governed by Artvale, Inc. v. Rugby Fabrics Corp., 363 F.2d 1002 (2d Cir.1966), in which we ruled that a covenant not to sue that made no clear provision for the recovery of litigation expenses as damages for breach did not entitle the defendant to such damages on account of the plaintiff's good faith testing of the scope of the covenant. We also stated that, absent express language, "we would not read such a covenant, without more, as intended to subject to damages a plaintiff who claimed in good faith that it had been obtained by unfair means." Id. at 1008 (dictum).
 
 
 33
 Here the district court found (1) that the settlement agreements contained no language suggesting that such damages were intended by the parties; (2) that the agreements did not provide that no suit could be brought on the ground that the agreements themselves had been fraudulently induced, and the present suits therefore were not obvious breaches of the covenants; and (3) that, as plaintiffs had at least one nonfrivolous ground for their lawsuits, the suits were not brought in bad faith. We see no basis for disturbing these findings, and we thus affirm on the basis of Artvale.
 
 CONCLUSION
 
 34
 The judgments of the district court dismissing the complaints and the counterclaims are affirmed.