Augustin v Formula 3 Brooklyn Inc. (2025 NY Slip Op 51113(U))

[*1]

Augustin v Formula 3 Brooklyn Inc.

2025 NY Slip Op 51113(U)

Decided on July 16, 2025

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 16, 2025
Supreme Court, Kings County

Louis Max J. Augustin, REGINALD HUBERT PRINCE, PAUL ANDRE DALUS, and LESLY PIERRE, Plaintiffs,

against
Formula 3 Brooklyn Inc., BARRY ITZKOWITZ, and BORIS ITZKOWITZ, Defendants.

Index No. 522188/2024

Arenson, Dittmar & Karban, New York City (Avi Mermelstein of counsel), for plaintiff.
Barry Itzkowitz, defendant pro se.
Boris Itzkowitz, defendant pro se.

Aaron D. Maslow, J.

The following numbered papers were used on this motion: NYSCEF Document Numbers 23-24, 34-81.
The order of this Court dated May 29, 2025 is hereby supplemented to the extent set forth herein.
Background
Plaintiffs Louis Max J. Augustin, Reginald Prince, Paul Andre Dalus, and Lesly Pierre (collectively "Plaintiffs") brought this complaint against Defendants Formula 3 Brooklyn Inc., Barry Itzkowitz, and Boris Itzkowitz (collectively "Defendants") for Defendants' alleged failure to pay minimum wage, overtime compensation, and other monies required by the New York Labor Law. Plaintiffs moved pursuant to CPLR § 3025 (b) to be granted leave to amend their complaint due to claims allegedly left off in an error of inadvertence (Motion Sequence No. 6). Defendants moved for an extension of time so that Defendant Formula 3 Brooklyn Inc. ("Formula 3") could retain counsel as required by law and for an extension of the answer [*2]deadline so that Formula 3 could respond timely to the complaint and properly defend itself. Formula 3 was previously appearing in this action by Barry Itzkowitz pro se in noncompliance with CPLR 321 (a), which states in relevant part that, "a corporation or voluntary association shall appear by attorney." Defendants also, using artificial intelligence software, submitted an extensive motion (Motion Sequence No. 7), the crux of which requested that the Court deny Plaintiffs' motion for leave to amend the complaint and impose "significant monetary sanctions" upon Plaintiffs and their counsel for alleged frivolous and abusive conduct in the filing and prosecution of their claims.
Following oral argument conducted virtually on May 29, 2025, this Court issued an order, which in pertinent part stated the following:
The motion by Plaintiffs seeking leave to amend the complaint (Motion Seq. No. 6) is GRANTED to the following extent:
(1) Plaintiffs are granted leave to amend the complaint in the proposed form annexed to the moving papers.
(2) A copy of this order with notice of entry shall be served upon all parties within ten days after entry of the order.
(3) Said amended complaint shall be deemed served upon service of this order with notice of entry thereof.
(4) Within 30 days after service of the amended complaint, Defendants shall serve an answer to it or otherwise respond thereto.
The motion by Defendant Barry Itzkowitz seeking an extension of time to respond to the complaint and for additional time for Defendant Formula 3 Brooklyn Inc. to retain an attorney (Motion Seq. No. 3) is DENIED.
The motion by Defendants Barry Itzkowitz and Boris Itzkowitz seeking various forms of relief, including dismissing the complaint, denying Plaintiffs['] motion for leave to amend the complaint, striking Plaintiff Lesly Pierre's claims, striking Plaintiffs Reginald Prince and Paul Andre Dalus' claims, and imposing sanctions on Plaintiffs and their counsel, and for a CPLR 3103 protective order (Motion Seq. No. 7) is DENIED.
Additionally, Defendants are ORDERED to comply with IAS Part 2 Rules[,] Part [II], Subpart B, § 15, concerning use of artificial intelligence programs with respect to any future papers submitted to the Court (see copy below).
With respect to the papers submitted by Defendants in connection with Motion Sequence Nos. 3, 6, and 7, determined herein, Defendants BARRY ITZKOWITZ and BORIS ITZKOWITZ shall comply with it by June 13, 2025. Subsequent to June 13, 2025, Plaintiffs are granted leave to make any motion with respect thereto.
§ 15. Artificial intelligence (AI) programs. All submissions with respect to a motion must include a certification by an attorney either that no generative artificial intelligence program was used in the drafting of any affidavit, affirmation, or memorandum of law contained within the submission, or that a generative artificial intelligence program was used but all generated text, including citations, quotations. and legal analysis was reviewed for accuracy and approved by an attorney (or the self-represented party). If the certification states a generative artificial intelligence program was used, the program must be identified and the documents which include matter generated by the program must be specified along with which parts of the documents were drafted by the program. [*3]One certification pertaining to a party's submission comprised of several such documents shall suffice.
All parties are encouraged to read IAS Part 2's Rules completely.
As of the writing of this supplemental decision and order, Defendants Barry Itzkowitz and Boris Itzkowitz have failed to comply with that portion of the May 29, 2025 order which required them to comply with IAS Part 2 Rules[,] Part II, Subpart B, § 15, concerning use of artificial intelligence programs in the papers they submitted in connection with Motion Sequence Nos. 3, 6, and 7.
Discussion
Generative artificial intelligence (AI) has yielded expansive technological breakthroughs for society at large, while simultaneously presenting novel issues of first impression within the judicial system. In 2023, the Southern District of New York addressed some pertinent harms stemming from improper usage of artificial intelligence in Mata v Avianca, Inc. (678 F Supp 3d 443 [SD NY 2023]). The Court summarized:
The opposing party wastes time and money in exposing the deception. The Court's time is taken from other important endeavors. The client may be deprived of arguments based on authentic judicial precedents. There is potential harm to the reputation of judges and courts whose names are falsely invoked as authors of the bogus opinions and to the reputation of a party attributed with fictional conduct. It promotes cynicism about the legal profession and the American judicial system. And a future litigant may be tempted to defy a judicial ruling by disingenuously claiming doubt about its authenticity. (Id. at 448-449.)
Since Mata, the American Bar Association has released guidance on AI use, and the technology has been a featured topic at legal conferences.[FN1]
Courts, such IAS Part 2, have adapted their rules to address AI programs. For example, this Court requires a certification of compliance stating that a generative artificial intelligence program was used, as quoted above in the May 29, [*4]2025 order.[FN2]
As the Mata Court stated, "Technological advances are commonplace and there is nothing inherently improper about using a reliable artificial intelligence tool for assistance. But existing rules impose a gatekeeping role on attorneys to ensure the accuracy of their filings." (Mata, 678 F Supp 3d at 448).
Nonetheless, fake citations ("hallucinations") and improper usage of AI continue to plague the courts. In Rochon-Eidsvig v JGB Collateral, LLC (No. 05-24-00123-CV, *2-5 [June 12, 2025]), the Court of Appeals for the Fifth District of Texas recently imposed sanctions on an attorney who citing non-existent cases, resulting from the use of AI to prepare a legal brief:
Appellants' May 16, 2024 Brief cited four cases that could not be located by Appellee or this Court. . . .
On April 20, 2025, Appellants filed a report conceding those identified cases could not be located and offering Appellants' counsel's regrets and acceptance of full responsibility for the error, as well as Appellants' assurances they were prepared to take whatever further action this Court deems necessary to correct the errors made in their May 16, 2024 Brief. Appellants identified appellant Heidi R. Hafer, an attorney licensed in this State, as the counsel who drafted that brief.
On April 24, 2025, we ordered Appellants' counsel Heidi R. Hafer to appear before this Court on May 8, 2025, to discuss Appellants' drafting of its opening brief. At that May 8, 2025 hearing, Appellants' counsel Heidi R. Hafer appeared with retained counsel, former Justice John G. Browning.
. . .
Regardless of whatever resources are used to prepare a party's brief, every attorney has an ongoing responsibility to review and ensure the accuracy of filings with this and other courts. This includes checking that all case law cited in a brief actually exists and supports the points being made. It is never acceptable to rely on software or technology—no matter how advanced—without reviewing and verifying the information. The use of AI or other technology does not excuse carelessness or failure to follow professional standards.
Technology can be helpful, but it cannot replace a lawyer's judgment, research, or ethical responsibilities. The practice of law changes with the use of new technology, but the core duties of competence and candor remain the same. Lawyers must adapt to new tools without lowering their standards.
Having considered the foregoing as well as Appellants' amended brief, we ORDER Appellants' counsel Heidi R. Hafer to complete and file proof of her completion of THREE (3) HOURS of Texas continuing legal education courses on ethics and FIVE (5) HOURS of Texas continuing legal education courses on technology. She may satisfy TWO (2) HOURS of our ordered technology requirement by filing proof of her completion of the "two hours of Texas continuing legal education courses on the ethical use and dimensions of generative A.I." she averred she had already completed in her May 19, 2025 Response to Appellee's Notice of Filing Attorney's Fees and Business Records Affidavit. We ORDER Appellants' counsel Heidi R. Hafer to file proof of completion of [*5]the ordered hours on or before THIRTY (30) DAYS from the date of this Court's order.
We FURTHER ORDER Appellants' counsel Heidi R. Hafer to pay $2,500 in attorney's fees to Appellee's counsel as a sanction for her misconduct before this Court. See Utz v. McKenzie, 397 S.W.3d 273, 281 (Tex. App.—Dallas 2013, no pet.) (acknowledging this Court's inherent authority to sanction attorneys who engage in misconduct before our Court). We ORDER Appellants' counsel Heidi R. Hafer to file proof of payment on or before THIRTY (30) DAYS from the date of this Court's order.
Kings County Supreme Court also recently warned a defendant's counselor, who cited in opposition fake case law generated by AI, with economic sanctions if this were to occur again (see Francois v Medina, 2025 WL 978860 [Sup Ct, Kings County 2025]). Last year the Surrogate's Court addressed allegations of AI use where it was evident that five of six cases cited in a reply brief were either erroneous or nonexistent (see Matter of Samuel, 82 Misc 3d 616 [Sur Ct, Kings County 2024]). The Samuel Court stated, "Although the court is dubious about using AI to prepare legal documents, it is not necessarily the use of AI in and of itself that causes such offense and concern, but rather the attorney's failure to review the sources produced by AI without proper examination and scrutiny," noting that the attorney took no steps to ensure the information and citations were legitimate and factual while affirming such to the court (id. at 620). The Samuel Court held counsel's conduct to be frivolous pursuant to 22 NYCRR 130-1.1 (c) because his reply asserted material factual statements regarding case law and court holdings that were false (id. at 621). The Samuel Court further held it within the court's discretion pursuant to 22 NYCRR 130-1.1 (a) to schedule an appearance to address whether an imposition of sanctions was warranted (id. at 622).
Though all aforementioned cases discuss the perils of improper attorney use of AI, the case before us specifically concerns pro se defendants. The Ohio Southern District Federal Court encountered a similar situation with a pro se litigant who admittedly used AI to prepare his case filings and submitted a 144-page complaint (see Whaley v Experian Info. Solutions, Inc., 2023 WL 5899845 [SD OH). The Whaley Court responded by dismissing the pro se litigant's complaint on the basis it was "verbose, confused, and redundant" (id. at 2). The Court deemed the complaint ambiguous and potentially frivolous or malicious, making it difficult for the opposing counsel to file a responsive pleading and for the court to conduct an orderly litigation (see id.). In chastising the plaintiff, the Court wrote:
Plaintiff admits that he used Artificial Intelligence ("AI") to prepare case filings. See Doc. No. 25 at PageID 536—37. The Court reminds all parties that they are not allowed to use AI—for any purpose—to prepare any filings in the instant case or any case before the undersigned. See Judge Newman's Civil Standing Order at VI. Both parties, and their respective counsel, have an obligation to immediately inform the Court if they discover that a party has used AI to prepare any filing. Id. The penalty for violating this provision includes, inter alia, striking the pleading from the record, the imposition of economic sanctions or contempt, and dismissal of the lawsuit. Id. (Whaley v Experian Info. Solutions, Inc., 2023 WL 5899845, *1 n 2.)
Here, the pro se Defendants, aided by AI, have filed numerous motions, one notably illogical. This has required both the Court and Plaintiffs' counsel to expend valuable time and energy to read Defendants' papers, confirm whether the AI system's case law is accurate, and [*6]respond. Defendants' use of AI to produce numerous motions containing nonsensical and incorrect statements is illustrative of how improper AI use impedes the legal system, a situation mirroring what transpired in Whaley.
Upon fact-checking one of Defendants' memoranda of law (in support of Defendants' seventh motion — the most extensive), at least five AI inaccuracies or "hallucinations"[FN3]
were found (NYSCEF Doc No. 52). This underscores the significance of compliance with the Court's rules regarding AI which have been promulgated to prevent this very situation: vast misuse of the Court's time as well as opposing counsel's, and hindrance of efficient judicial processes. It is of the utmost importance in preserving the integrity and functioning of the legal system that attorneys as well as pro se litigants not improperly use AI and comply by affirming the accuracy of the information provided to the Court.
Within Defendants' above-mentioned memorandum of law, under Point I, Defendants cite "Graziano v. County of Nassau, 202 AD3d 707, 708 (2d Dep't 2022)." (NYSCEF Doc No. 52 at 2). "Graziano" allegedly supports the proposition that "Discovery cannot resuscitate claims demolished by this conclusive evidence" (id.). However, upon review of the citation "202 AD3d 707, 708," it references not "Graziano," but the criminal case of People v Devore. As these parties are engaged in civil litigation the use of criminal case law itself is nonsensical. Further, Devore does not stand for any holding regarding discovery and is instead a Second Department affirmation of a conviction of varying degrees of burglary and robbery (see People v Devore, 202 AD3d 707 [2d Dept 2022]). No case by the name of "Graziano v. County of Nassau" appears to exist. Defendant cites the nonexistent "Graziano" once again in Point III, Section F of their argument in support of pre-discovery dismissal (see NYSCEF Doc No. 52 at 4). Additionally, Defendants' Exhibit M, which contains case law printouts, states a contradictory holding for Graziano beyond what was established in their memorandum of law (see NYSCEF Doc No. 66 at 3).
Further in Defendants' memorandum of law, Point III, Section E cites "Bellefonte Re Ins. Co., 757 F.2d 523," another improper citation (NYSCEF Doc No. 52 at 4). Defendants cite Bellefonte to support their argument that since Plaintiffs' perceive Formula 3's manager Rahman as controlling the car wash operation, Defendants' liability as Plaintiffs' employer is undermined. However, Bellefonte actually held that a district court ruling granting summary judgment on behalf of a defendant for a lack of alleged fraudulent inducement was proper (see Bellefonte Re Ins. Co. v Argonaut Ins. Co., 757 F2d 523 [2d Cir 1985]).
Then, under Point IV, Section A, "Utter Futility," Defendants cite two cases which purportedly represent holdings referring to time-barred claims (see NYSCEF Doc No. 52 at 4). One of the cases, Y.A. v Conair Corp., 154 AD3d 611 [1st Dept 2017], has no mention of time-barred claims, relevant or otherwise, and is instead a First Department case affirming the denial of a defendant's CPLR 3025 (b) motion to amend their answer due to insufficiency to state a cognizable claim. The other case is merely referred to as "Perez," and with no other identifying citation supplemented, it is impossible for the Court to locate the case, if a real case was even [*7]intended.
Finally, Defendants cite, "Cole, 93 NY2d at 40," in support of Plaintiffs' alleged "demonstrable bad faith" in requesting leave to amend their complaint (NYSCEF Doc No. 52 at 5). Cole v Mandell (93 NY2d 34 [1999]) is a real case from the Court of Appeals. However, Cole stands for the requirement of a plaintiff to properly satisfy one's pleading burden in order to claim an exemption set forth in CPLR § 1602.[FN4]
Cole is not applicable here as the case at bar does not involve a personal injury action regarding liability of joint tortfeasors. While Defendants' AI system did cite from Cole factually correct law regarding the elementary and primary functions of a pleading to apprise an adverse party of the pleader's claim, the Court does not find it persuasive in this instance when taken in context (see Cole, 93 NY2d at 40). Defendants look to support a claim of prejudice based on an alleged inability to prepare a defense to Plaintiffs' allegations due to Plaintiffs' insufficient pleadings. However, Plaintiffs simply seek to amend their complaint to include an additional claim on behalf of an additional plaintiff whose name was previously pleaded. This claim is analogous to the earlier alleged failures of Defendants to perform requisite duties under the Labor Law to pay minimum wage. The Second Department has found a lack of prejudice or surprise "where the proposed amendments were premised upon the same facts, transactions or occurrences alleged in the original complaint" (Janssen v Inc. Vil. of Rockville Ctr., 59 AD3d 15, 27 [2d Dept 2008]; see also Flowers v Mombrun, 212 AD3d 713, 715 [2d Dept 2023] [finding no surprise or prejudice where proposed amendments added details about the communications between the parties regarding the plaintiff's claims, as they were premised on same facts, transactions or occurrences alleged in the original complaint and "merely elaborated on the same theory of liability alleged in the original complaint"]). Thus, Defendants have been placed adequately on notice and will experience no prejudice or surprise by an amendment adding the corresponding claim.
For the sake of brevity the Court will not enumerate each and every phony or incorrect citation included by Defendants in their various submitted papers.
The Court does recognize that pro se litigants might not be familiar with legal procedures and that a certain latitude may be afforded to them (see Brown v Lavine, 45 AD2d 753 [2d Dept 1974] [new administrative hearing afforded pro se individual who erroneously thought pre-hearing off-the-record defense presented to hearing officer was on the record]); Haverlin v Gottlieb, 49 Misc 3d 131[A], 2015 NY Slip Op 51750[U] [App Term, 9th & 10th Dists. 2015] [motion providently construed as one to renew]; Bank Trust Natl. Assn. v Dubrowski, 2024 WL 3312482 [Sup Ct, NY County 2024] [court will examine claim under uncited provision as well as cited one]; Matter of J.E.P. v People, 9 Misc 3d 1104[A], 2005 NY Slip Op 51397[U] [Fam Ct, Nassau County 2005] [incorrect caption and minor technical deficiencies in papers excused]). Even so, "A self-represented litigant acquires no greater rights than any other litigant (see Duffen v. State, 245 AD2d 653, 665 N.Y.S.2d 978; Brooks v. Inn at Saratoga Assn., 188 AD2d 921, 591 N.Y.S.2d 625)" (Greenfield v Gluck, 2003 WL 1961333 [App Term 2d & 11th Dists 2003] [untimely summary judgment motion]).
Here, Defendants' use of AI frustrates the litigation and is not in compliance with this Court's IAS Part 2 rules regarding artificial intelligence use. IAS Part 2 rules are well supported [*8]by persuasive case law regarding appropriate and proper use of artificial intelligence and are to be complied with by both the attorneys before this Court as well as pro se litigants. Additionally, Defendants' motion denoted as Motion Sequence No. 7 also fails to meet the standards of CPLR § 2214 (a) and therefore must result in denial despite the motion being made by a pro se litigant (see Abizadeh v Abizadeh, 159 AD3d 856 [2d Dept 2018]; Renaud v Renaud, 79 Misc 3d 1237 [A], 2023 NY Slip Op 50824 [U] [Sup Ct, Kings County 2023]). Ultimately, a pro se defendant's lack of understanding about the legal process does not, by itself, constitute a reasonable excuse (see OneWest Bank, N.A. v Jacobs (234 AD3d 983, 985 [2d Dept 2025]).
Conclusion
In response to this issue of first impression upon the Court implicating a pro se litigant's noncompliance with IAS Part 2 Rules, Part 2, Subpart B, § 15 on Artificial Intelligence, the Court will be amending its rules to make it even more explicitly clear that compliance by pro se litigants in addition to attorneys is absolutely mandatory.
At the hearing held on May 29, 2025, Plaintiffs' motion seeking leave to amend the complaint (Motion Seq. No. 6) was GRANTED. Defendant Barry Itzkowitz's motion seeking an extension of time to respond to the complaint and for additional time for Defendant Formula 3 Brooklyn Inc. to retain an attorney (Motion Seq. No. 3) was DENIED, as it was rendered academic in light of the thirty-day additional time window upon service of Plaintiffs' amended complaint. Additionally, the motion by Defendants Barry Itzkowitz and Boris Itzkowitz seeking various forms of relief, including dismissing the complaint, denying Plaintiffs' motion for leave to amend the complaint, striking Plaintiff Lesly Pierre's claims, striking Plaintiffs Reginald Prince and Paul Andre Dalus' claims, imposing sanctions on Plaintiffs and their counsel, and for a CPLR § 3103 protective order (Motion Seq. No. 7) was DENIED.
Further, Defendants were ORDERED to comply with IAS Part 2 Rules, Part 2, Subpart B, § 15, concerning the use of artificial intelligence programs with respect to any future papers submitted to the Court.
Defendants Barry Itzkowitz and Boris Itzkowitz were ORDERED as well to retroactively comply by June 13, 2025 with said Rules provision insofar as Motion Sequence Nos. 3, 6, and 7 were concerned. As Defendants Barry Itzkowitz and Boris Itzkowitz have failed to comply with that branch of this Court's order — to comply with this Court's AI rules respect to the papers submitted by Defendants in connection with Motion Sequence Nos. 3, 6, and 7 — by the June 13, 2025 deadline, the Court, pursuant to 22 NYCRR 130-1.1 (a), will now be exercising its authority by conducting a hearing to address whether an imposition of financial sanctions is warranted for noncompliance. The PARTIES, INCLUDING DEFENDANTS BARRY ITZKOWITZ AND BORIS ITZKOWITZ, ARE HEREBY ORDERED TO ATTEND SUCH HEARING, to be conducted virtually through Microsoft Teams on Monday, July 28, 2025, at 3:00 p.m.
The Court will be sending the parties the link to join the hearing in a notice.

Footnotes

Footnote 1:"An onslaught of AI-generated hallucinations in court filings shows lawyers haven't yet learned how to finesse their use of the rapidly changing technology, as the financial and reputational risks of citing fake cases is expected to climb" (Evan Ochsner, AI Fake Citations Expose Lawyer Sloppiness and Training Gaps, Bloomberg Law, available at https://news.bloomberglaw.com/legal-ops-and-tech/ai-fake-citations-expose-lawyer-sloppiness-and-training-gaps [last accessed July 14, 2025]). The ABA Learning Center contains a course entitled "AI & Ethics Unleashed: Navigating the Use of Generative AI in Your Legal Practice" (see https://learningcenter.americanbar.org/courses/90617). The New York State Unified Court System recently featured a discourse on the use of generative AI in preparing legal papers at its recent annual conference for judges.

Footnote 2:IAS Part 2 Rules appear at https://ww2.nycourts.gov/courts/2jd/kings/civil/MaslowRules.shtml.

Footnote 3:For more information explaining hallucinations and how AI can go wrong see Cade Metz, What Makes A.I. Chatbots Go Wrong?, NY Times, Mar. 29, 2023, available at www.nytimes.com/2023/03/29/technology/ai-chatbots-hallucinations.html (last accessed July 15, 2025).

Footnote 4:CPLR § 1602 sets forth limitations on liability for claims of contribution or indemnification in a personal injury action.